658 P.2d 988

**Claude A. BEARE, dba Yogi's Diesel Repair, Plaintiff-Respondent,**

v.

**STOWES' BUILDERS SUPPLY, INC., an Idaho Corporation, Defendant-Appellant.**

**No. 14296.**

Court of Appeals of Idaho.

Feb. 2, 1983.

Richard Wayne Sweney, of Coeur d'Alene, for defendant-appellant.

Norman L. Gissel, of Coeur d'Alene, for plaintiff-respondent.

WALTERS, Chief Judge.

Claude Beare, dba Yogi's Diesel Repair, sued to collect the balance owing for labor and parts furnished in the repair of a loader

owned by Stowes' Builders Supply, Inc. The loader was used to move lumber and logs at the owner's sawmill. The owner defended against the complaint by alleging negligence and breach of contract in the repair of the loader. It further asserted a counterclaim for the costs of a second repair and for recoupment of other damages. The trial court allowed recovery of $2,148.87 to Beare, and denied the owner's counterclaim. The owner appeals. We affirm.

We have consolidated the claims of error presented by the owner into the following four issues: First, did the trial court err in holding the owner liable for the repair of the loader by Beare? Second, was Beare liable to the owner for damages because his repair work was not performed with due care and in a workmanlike manner? Third, was Beare liable for damages because his repair work was not performed with due diligence and in a timely fashion? Fourth, did the owner present adequate proof of resulting damages to support a monetary award or an offset against any obligation owed to Beare?

The facts found by the trial court from the evidence presented at trial may be summarized as follows. In the fall of 1977, the diesel engine in the owner's loader was malfunctioning. Claude Beare inspected the machine at the mill site and determined that an overhaul was needed. He indicated that he could overhaul the engine in a one-week period if parts were available.

On December 13, the loader was delivered to Beare's garage. Grant Stowe, manager of operations at the mill, clearly explained to Beare the company's dependence on the loader and the need to have the repair work completed as soon as possible. Beare assured Stowe that the job could be completed in one week. Stowe signed a work order requesting an "overhaul" and left Beare's garage believing that Beare had *guaranteed* completion of the overhaul in one week. However, no completion date was expressed on the work order.

By December 17, the engine had been disassembled and its repair needs ascertained. From this point on, the repair job was fraught with delay and difficulty. Delivery of some parts was delayed by the holiday season. The parts suppliers took four-day holidays for both Christmas and New Year's days. Beare had to subcontract the task of reboring the engine block. Extreme winter weather visited northern Idaho, freezing the water pipes in Beare's garage, effectively shutting down the repair work for a short time, and additionally burdening Beare's garage with emergency repair jobs on commercial trucks traveling interstate routes.

The owner could not keep the lumber mill closed longer than one week. On December 19, replacement equipment was hired to perform the work at the lumber mill until the loader was returned, which, as it turned out, was about one month later. The rental cost of the replacement loader also included the wages for an operator, because the owner of that loader insisted on operating his own machine.

Beare finally completed the repair job on or about January 20. Before the loader was returned, it was allowed to run nonstop for several hours at Beare's garage to test the overhaul job. Beare testified that it operated satisfactorily. The vehicle was delivered to the owner's mill on a Friday afternoon and sat without running until the following Monday morning. No antifreeze had been put in the coolant following the overhaul. On Monday, when an effort was made to start the engine, the cooling system was found to be frozen. Later that week Beare called the owner, demanding payment of the balance due on the repair job. The owner refused to pay until it could be ascertained whether the frozen coolant had damaged the engine. Beare threatened suit.

After the engine was thawed, it was started up, but it ran roughly, belched black smoke, vibrated excessively, and lacked power. Several bolts connecting the engine to the transmission were missing and had to be installed. This stopped the vibrations, but the engine still did not have the power to carry a workload.

A provision of the work order stated as follows: "All parts and labor thirty days warranty or four thousand miles whichever comes first. In our shop with Yogi's approval."[1] The owner did not call Beare, who had just threatened suit, to have him remedy the problem. Instead, the loader was delivered to Spokane Diesel where it was completely disassembled and rebuilt to factory specifications. Spokane Diesel replaced many of the parts installed at Beare's garage. Several parts that Beare had not replaced, but had left in the engine, were also replaced by Spokane Diesel. It was also discovered that the compression seals situated on top of the piston liners had not been installed when the engine was reassembled by Beare. The final bill for this second repair job was $2,860.79. The loader was returned to work on February 22. The bill for the rental cost of the replacement loader from December 19 to February 22 came to $7,306.20.

We first address the question whether the trial court was correct in holding the owner liable for the repairs made by Beare. The owner argues that by requesting an engine overhaul, he contracted with Beare to have the engine rebuilt and placed in a "like-new" condition. However, the trial court found that there was no meeting of the minds regarding the precise work to be done in the requested "overhaul". Moreover, conflicting evidence was presented by qualified mechanics as to precisely what work one would perform in an "overhaul." The evidence also differed as to the quality of the repairs made by Beare.[2]

The trial court did not find in favor of Beare solely upon a theory of complete performance, or even of substantial performance, of the contract to repair the loader. The court, instead, determined the matter upon a burden-of-proof approach. The court held that the owner failed to establish, by a preponderance of the evidence, that Beare had performed the repair improperly or that Beare had failed to do the work he was required to do.

The trial court's approach was consistent with that approved in *Dick v. Reese,* 90 Idaho 447, 412 P.2d 815 (1966). There the appellant Reese refused to pay Dick for repairs to Reese's diesel truck, contending that the repair job was performed in an improper manner. Affirming a judgment in favor of Dick, the Supreme Court noted that an automobile repairman must exercise ordinary care and skill in making repairs. Because an allegation of improper performance of repairs constitutes an affirmative defense under I.R.C.P. 8(c), the Court held that the burden of proving the repairman's breach of duty rests upon the one who claims that the repairs were defectively made. The Court further held that Reese had failed to establish what act, if any, on the part of Dick constituted breach of the duty to make repairs with commensurate care and skill. The trial court was upheld on the basis that its finding of proper performance of the repairs was supported by substantial and competent, though conflicting, evidence.

Here the trial court held that the owner did not establish that Beare failed to perform his work properly, with the exception that the compression seals were missing. In respect to the missing seals, the court was unable to make any award or offset in favor of the owner because the cost of remedying that problem had not been segregated from other portions of the second repair work.

We hold that the rationale of *Dick v. Reese* is applicable here. There is substantial and competent, although conflicting, evidence to support the trial court's determination as to liability of the owner for

---

1. Because we uphold, *infra,* the trial court's determination that the owner failed to prove liability or amount of loss on the counterclaim, we need not comment on whether the quoted warranty represented a limitation upon the owner's remedies for faulty work.

2. For example, one of the owner's own witnesses, the mechanic who made the second repair at Spokane Diesel, admitted on cross-examination that if the compression seals had not been missing, and if the purpose of Beare's work was to get the engine running and "back on its feet," the repair job was "fair."

Beare's repairs. That determination will not be disturbed. I.R.C.P. 52(a).

Next, we consider the owner's counterclaim. The issue, again, is whether Beare repaired the loader with due care and in a workmanlike manner. The owner points out that the loader had no capacity to carry a workload when it was returned to the mill site. The owner submits that the mechanic who performed the second repair job had to disassemble the engine to cure the faulty repair, and had to replace several parts either installed by or not changed by Beare.

■ However, the trial court found that Beare's failure to replace many used parts was not a failure to use due care because there was no showing that these parts had been worn out or were in need of replacement. The court found that many of the parts were replaced during the second repair not because they had been worn out or no longer functioned properly, but simply because it was the shop's policy on a job of that kind to replace all parts. The court determined that the owner had failed to establish by a preponderance of the evidence that any of the work done in the second repair was a result of the failure of Beare to perform his work properly. There is substantial competent, though conflicting, evidence to support this finding. We will not disturb it.

■ We next address the related question whether, on the counterclaim, Beare is liable for damages to the owner because the repair work allegedly was not performed with due diligence and in a timely fashion. The owner maintains that Beare guaranteed a one-week time limit for the completion of the repair work, that the one-month delay was attributable to Beare's lack of diligence and neglect of the loader repair, and that Beare should therefore be liable for the rental cost of the replacement loader for this entire period.

The trial court determined that Beare did not guarantee completion within one week and that the repair job, hampered by circumstances beyond Beare's control, was performed with reasonable diligence. The evidence concerning whether Beare guaranteed to complete the repair in one week is conflicting. The trial court determined that no such guarantee had been made. Rather, the court found, Beare assured the owner that the work could be finished in one week, if the parts were available. Although conflicting evidence was presented, this finding is supported by competent and substantial evidence. It will be upheld on appeal.

Likewise, conflicting evidence exists concerning whether the lengthy repair job was performed with due diligence. Grant Stowe testified that he often saw the loader standing unattended and unworked on during the period it was at Beare's garage. The record, however, also contains evidence to support the findings of the trial court that the delay was not Beare's fault, but caused by circumstances beyond his control. The court found from the evidence that a prolonged delay in parts delivery occurred due to no fault of Beare, because the suppliers indulged in two four-day holidays and one part, a vacuum pump, had to be factory-ordered and was not delivered to Beare's shop until some time after January 12. The court found that, during this period, the police often called on Beare to provide emergency service for diesel rigs that malfunctioned while traveling interstate routes in the extreme winter weather. We will not disturb the findings of the trial court supporting the conclusion that Beare performed his work, under the circumstances, with due diligence. Accordingly, we uphold the determination of the trial court that Beare is not liable for that part of the rental cost of the replacement loader incurred while the repair work was delayed in Beare's shop.

Finally, the owner disputes the trial court's determination that the owner failed to prove that it was damaged as a result of Beare's repair work. To the extent this issue is viewed strictly as one of damages, we would not be required to reach it, because we have upheld the trial court's determination on the question of liability upon the counterclaim. However, because the issue might also be viewed as one of entitlement to an offset against the obligation owed to Beare, we will address it.

■■ The owner invites our attention to three separate instances in which alleged negligence by Beare resulted in a cost to the owner. First, Beare failed to place antifreeze in the coolant system, which consequently froze. No damages or offset were allowed for this omission, however, because there was no proof that the freezing actually damaged the engine. *Compare, e.g., Ford v. Transport Holding Company,* 96 Idaho 388, 529 P.2d 784 (1974) (damages awarded where engine block froze and burst because antifreeze had not been put in the block by repairman). Second, several bolts connecting the transmission to the engine were not replaced after the repair was completed by Beare, causing the loader to vibrate excessively when running. No award was made on this claim because there was no proof of the resultant cost incurred by the owner. Third, the compression seals were not installed in the engine when it was reassembled by Beare. Again, no award was made because the owner did not prove the cost of curing this failure; nor did the owner prove that the lack of seals caused the second repair job to be as extensive and costly as it was.

A person asserting a claim of damages has the burden of proving not only a right to damages, but also the amount of damages. *Fish v. Fleishman,* 87 Idaho 126, 391 P.2d 344 (1964). The law does not permit arriving at the amount of damages by conjecture. *See, e.g., Agrilease, Inc. v. Gray,* 173 Mont. 151, 566 P.2d 1114 (1977); *Alper v. Stillings,* 80 Nev. 84, 389 P.2d 239 (1964); *Vanderhoff v. Fitzgerald,* 72 Wash.2d 103, 431 P.2d 969 (1967). Arguably, the owner's proof showed a right to damages or an offset for the improper installation of the compression rings, which had to be installed in the second repair job. But the only proof of the cost of repair was introduction of the Spokane Diesel's entire bill of $2,860. The trial court refused to make an award because the owner had failed to prove the particular costs or losses alleged. Likewise, with respect to rental of a replacement loader, the entire bill was introduced in evidence. No proof was made concerning whether it was reasonable to hire both the replacement loader and its operator. Nor was the rental cost for the period the loader was at Beare's garage proven so that the rental cost during the second repair job could be ascertained.

We conclude that the trial court did not err in refusing to award recovery to the owner on its counterclaim, even if liability had been found. The trier of fact need not award a claimant his ultimate loss where the only proof available on the amount requires a "blind guess" as to the loss involved. *See Call v. Coiner,* 43 Idaho 320, 251 P. 617 (1926).

Accordingly, we affirm the judgment. We decline to award attorney fees to either party on appeal. Costs to respondent, Claude Beare.

SWANSTROM and BURNETT, JJ., concur.