705 P.2d 1050

**August MARTSCH; Vilma Martsch; Hulda Kerbs and August Martsch as personal representative of the estate of William B. Bonnicksen, Plaintiffs-Respondents,**

**v.**

**Gerry B. NELSON; David F. Nelson; Arlond E. Sharp; Golden Dream Mining Company, Inc., and John Does 1–10, Defendants-Appellants.**

**No. 14880.**

Court of Appeals of Idaho.

Aug. 29, 1985.

Petition for Review Denied
Nov. 20, 1985.

Brent T. Robinson of Ling, Nielsen & Robinson, Rupert, for defendants-appellants.

William L. Nungester and John Hohnhorst of Hepworth, Nungester & Felton, Twin Falls, for plaintiffs-respondents (on appeal only).

SWANSTROM, Judge.

Plaintiffs brought this action to quiet title to certain mining claims and to have the court declare void or unenforceable a mining agreement with defendants who had been operators of plaintiffs' gold mill and mining property. Damages were also sought for improper maintenance of the mill. The operators counterclaimed, seeking to specifically enforce the agreement and to collect damages for wrongful eviction from the property before the end of the contract period. After a trial, the judge ruled the contract valid but no longer in effect. The owners were awarded $7,000 damages for the operators' improper maintenance of the mill and the operators were awarded $400 damages caused by their wrongful eviction. The judge ruled that the owners were the prevailing party and awarded them costs. The operators appeal from the judgment. We affirm.

The issues on appeal concern whether the district court correctly construed a renewability clause in the mining agreement; whether the court erred by denying the operators the remedy of specific enforcement; whether the damages awarded to the owners for repairs they made to the mill after repossession had been adequately pled and proven; whether punitive damages should have been awarded to the operators by reason of a wrongful eviction; and whether the owners were entitled to costs as "prevailing" parties.

August and Vilma Martsch, Hulda Kerbs and William B. Bonnicksen owned lode mining claims in the Yankee Fork Mining District of Custer County, Idaho, known as the "Ace in the Hole Claims No. 1 through 9" and two placer mining claims known as "Two Aces No. 3 and 4." A mill site was located on the Ace in the Hole claims. The mill had been built in the early 1970's but had not been used after 1973. On June 9, 1978 the owners signed a one page mining agreement authorizing Gerry and David Nelson to mine the claims and operate the gold mill for a four-year period. The document, drafted by Gerry Nelson but signed only by the owners, recited that "this con-

tract is renewable after four years with the same agreement. . . ." The operators were given a seventy-five percent share in "all profit" while the owners were given the remaining twenty-five percent.

The first summer the operators spent a great deal of time repairing the mill. Very little ore was extracted and mined. At the end of the first mining season David Nelson transferred his interest to his father, Gerry Nelson, and left the mining operation. Arlond Sharp, Gerry Nelson's stepfather, who was providing financial backing to the Nelsons, wanted to take over David's interest in the mining operation. Gerry Nelson and Sharp became partners. However, Sharp would only agree to become directly involved if the operators' percentage of profits were increased from seventy-five percent to ninety percent and the owners' percentage were decreased accordingly. The district court found that the original agreement was amended on April 9, 1979 to effect these changes although nothing was signed by any of the parties at that time. Later that year William Bonnicksen passed away. August Martsch was named personal representative of Bonnicksen's estate.

In 1980 Gerry Nelson and Sharp purported to transfer their interest in the mining operation to their newly formed corporation, Golden Dream Mining Company. Through their attorney, they contacted August Martsch, indicating their interest in acquiring ownership of the mining claims. The owners then asked for an accounting from Gerry Nelson and demanded that the operators restore certain of the mill equipment. When these demands were not satisfied, the owners gave notice they had "terminated" the agreement. In October, 1980, August Martsch, as personal representative of the Bonnicksen estate and acting for himself and the other owners, retook possession of the mining property. This suit was filed shortly thereafter.

The action was tried before the court without a jury. The record contains several volumes of testimony. The most debated issues concerned who could renew the

mining agreement, the operators, the owners, or both; what the word "profits" meant and whether the operators were withholding "profits" from the owners;[1] the claims for damages, general and punitive, by both the owners and the operators. First, the district court concluded that the agreement between the parties was not a lease, rather it was only an authorization to mine; therefore, so far as specific performance is concerned, "the principles relating to real property are not applicable." During trial the court had ruled that the renewal clause was ambiguous. Extrinsic evidence was allowed to show the intentions of the parties. As a result, the court held, the renewal clause of the agreement meant all parties had to mutually agree before the contract could be renewed. Since the owners refused to renew the agreement, it was not renewable. The court also held the operators were wrongfully evicted from the premises, but held that specific performance was neither required nor appropriate. The operators were awarded $400 for expenses incurred for further exploratory work done in reliance on the agreement. Lastly, the court held that the operators had improperly maintained the equipment at the mill and awarded the owners $7,000 for costs of repairs. Accordingly, the owners received a net judgment for $6,600 plus costs for being the prevailing party.

On appeal, the operators first assert the district court erred in holding that the renewal clause was ambiguous, in admitting parol evidence to show the intent of the parties, and in ruling that all parties to the mining agreement had to agree to renew before the agreement could be renewed. The mining agreement stated "this contract is renewable after four years with the same agreement...." However, the agreement fails to define the word "renewable" or to explain how or by whom the contract could be renewed. The operators argue that the "renewable" clause was unambiguous and that they alone had the authority to renew the agreement. Therefore, they contend, parol evidence was impermissibly admitted to determine the intent of the parties at the time the contract was written. The owners, on the other hand, argue that the use of the word "renewable" raises the issue of who had the authority to renew the contract, contending it was to be a mutual decision between the parties. We do not believe it is necessary to decide whether the district judge correctly ruled on this point. Even if the judge were wrong, the operators have not shown that the ruling deprived them of any relief to which they were entitled. Our reasons are as follows.

The operators offered no proof as to the amount of any profits lost as a result of their being wrongfully evicted before the end of the four-year contract period. By the time of trial this four-year term had expired. Therefore, neither damages for lost profits nor specific performance for that term was an appropriate remedy.

The operators argue that it was not possible for them to prove lost profits for the four-year renewal term because of the many unpredictable variables which could affect the income, production and expenses of the operation. Relying upon the uniqueness of the property, the operators argue that the district court erred in not using the remedy of specific performance so that the operators could have whatever benefit they could derive from their bargain during the four-year renewal term. The district court declined, holding that "the remedy for wrongful eviction before expiration of the agreement is damages and not specific performance." The district judge also held that the mining agreement was not a lease.

1. The district court found that by mutual mistake of the parties to the original document the term "profits" had been used where the parties actually intended to say "gross receipts." He found that in 1979 the parties amended the agreement. After that amendment the parties intended the word "profits" to mean "income from the mining operations after expenses." The operators were thereafter entitled to ninety percent of the profits and the owners were to receive ten percent. On appeal, none of the parties has challenged these findings of the district court.

Therefore, he felt he was not bound to the general principle that real property is unique and that an aggrieved party has no adequate remedy at law. *See, e.g., Suchan v. Rutherford,* 90 Idaho 288, 410 P.2d 434 (1966) *and Wood v. Simonson,* 108 Idaho 699, 701 P.2d 319 (Ct.App.1985). While we cannot agree that the operators had no real property interest in the mining claims, we do agree that specific performance of the mining agreement was not a suitable remedy in this case.

■■■ Here, the parties' written agreement was the barest sort of a contractual outline that could be imagined. As we have noted, it contained inappropriate and incomplete terms. It failed completely to clearly define how "profits" and allowable expenses were to be determined. The extrinsic evidence needed to "flesh out" the written agreement was highly disputed. The parties were distrustful of each other. They apparently waited too long to seek legal assistance to guide them in this ill-starred enterprise. In short, were the court to grant specific performance it would be embroiled in a long-range supervisory effort of a dubious business operation. Without close supervision by a disinterested expert—an arm of the court—the court could not effectively protect the rights of all of the interested parties. There is little reason to believe that the added expense of such supervision could be borne by the operation. As our Supreme Court noted in *Suchan v. Rutherford, supra,* in such circumstances specific performance is not an appropriate remedy.

We conclude that even if the agreement was renewable solely at the option of the operators, the operators have not shown entitlement to relief. They have failed to show that the premature termination of the lease caused any loss of future profits over and above the allowable future operating expenses. The only other damages shown by the operators to have been caused by the eviction were awarded by the district court. Therefore, if the district court erred in ruling that the agreement was non-re-newable unless all parties agreed to the renewal, the error was harmless.

■■■ The operators also sought punitive damages for their wrongful eviction. However, the district court held that an award of punitive damages was inappropriate where there was not a breach of the peace. Punitive damages are only recoverable when the actions of the wrongdoer are wanton, malicious or gross and outrageous or the facts imply malice and oppression. *Linscott v. Rainier National Life Insurance Company,* 100 Idaho 854, 606 P.2d 958 (1980); *Unfried v. Libert,* 20 Idaho 708, 119 P. 885 (1911). Punitive damages should be awarded with caution within narrow confines such as when the wrongdoer's conduct is reprehensible and extraordinary relief is required.

■■■ Here, the district court commented that "neither side has shown sufficient bad practice on the part of the other side to warrant any ... punitive damages." We are confident that the district court took into consideration the overall conduct of the parties, not merely the fact that the eviction was accomplished without "a breach of the peace." The decision of the court not to award damages is a discretionary one within the general advisory guidelines laid down by our Supreme Court. *See Cheney v. Palos Verdes Inv. Corp.* 104 Idaho 897, 665 P.2d 661 (1983). We hold this decision was not erroneous.

The operators also contend the district court erred when it held that the operators improperly maintained the equipment at the property and awarded the owners $7,000 damages for the cost of repairs. Walter Paul, an expert mill builder and operator, testified for the owners at trial. Paul had been at the mill late in 1980 when it was being operated by Nelson. He inspected and repaired the mill for the owners in 1981 after the operators had left the property. Paul testified the cost of repairs were $7,000 although his records were unavailable and not admitted into evidence. According to Paul, the condition of the mill was due not to ordinary wear and tear but to a lack of care and maintenance by its

former operators. On the other hand, the operators presented evidence that the equipment was already in poor shape when they began operating the mill and that they had maintained it regularly.

■ "A person asserting a claim of damages has the burden of proving not only a right to damages, but also the amount of damages." *Beare v. Stowe's Builders Supply, Inc.*, 104 Idaho 317, 321, 658 P.2d 988, 992 (Ct.App.1983). The amount of damages must be supported by substantial evidence and not based upon mere conjecture. *Id.; Alper v. Stillings*, 80 Nev. 84, 389 P.2d 239 (1964). Evidence which is contradicted may nevertheless be substantial evidence. The evidence must be of sufficient quality and probative value that the trier of fact could reasonably conclude that an award of such amount was proper. *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974); *Larsen v. Uriona*, 107 Idaho 925, 693 P.2d 1127 (Ct. App.1985).

■ Rule 52(a) of the Idaho Rules of Civil Procedure governs the appellate standard of review in actions tried without a jury. It provides in pertinent part:

Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appear personally before it.

Clear error, in turn, will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). The party challenging the findings has the burden of showing error, and the appellate court will review the evidence in the light most favorable to the prevailing party. *Jones v. Mountain States Telephone and Telegraph Co.*, 105 Idaho 520, 670 P.2d 1305 (Ct.App.1983).

■ In the case before us, there was evidence that the operators had assumed a duty to put the mill in good working condi-

tion. Paul testified to the condition of the mill after the operators left, the repairs necessitated to put the mill in good working order and the cost of those repairs. Although Paul did not have any of his records with him, he was cross-examined as to the cost of specific items purchased and what he charged for labor. In our view, the record contains sufficient evidence of improper maintenance of the mill by the operators, the need of repairs, which were made, and their cost. We believe the district judge reasonably could have inferred from Paul's testimony that the cost of repairs was reasonable. Therefore, we will uphold the district court's award of $7,000 to the owners for damages.

The last issue we examine is the award of costs to the owners as the prevailing party. In *Chadderdon v. King*, 104 Idaho 406, 659 P.2d 160 (Ct.App.1983) we stated:

Under Rule 54(d)(1)(B), a trial court, in the exercise of its discretion, may consider both the presence and absence of awards of affirmative relief, in determining which party prevailed either in whole or in part. We decline to interfere with this determination by limiting the scope of the inquiry available to trial courts in fulfilling their discretionary functions under the rule, except by the established test of whether an abuse of discretion has occurred. In *Hutchinson v. Kelton*, 99 Idaho 866, 590 P.2d 1012 (1979), our Supreme Court reviewed a discretionary determination under I.R.C.P. 54(d)(1)(B), and applied the test announced in *Lisher v. Krasselt*, 96 Idaho 854, 538 P.2d 783 (1975). We deem that test applicable here. In *Lisher* the court said:

[W]here the trial court has exercised such discretion after a careful consideration of the relevant factual circumstances and principles of law, and without arbitrary disregard for those facts and principles of justice, we will not disturb that action. [*Id.* at 857, 538 P.2d at 786].

*Id.* at 411–12, 659 P.2d at 165–66. *See also, Burnham v. Bray*, 104 Idaho 550, 555, 661 P.2d 335, 340 (Ct.App.1983).

A party need not be awarded total relief to be the prevailing party. The district court's award of costs will be upheld absent an abuse of discretion. We find there is no abuse of discretion here. We therefore uphold the award of costs.

No attorney fees on appeal. Judgment affirmed.

WALTERS, C.J., concurs.

BURNETT, J., concurs in result.