710 P.2d 628

**Richard NORDSTROM,
Plaintiff-Appellant,**

v.

**DIAMOND INTERNATIONAL CORPORATION, Defendant-Respondent.**

**No. 15428.**

Court of Appeals of Idaho.

Nov. 21, 1985.

James P. Keane and Charles L.A. Cox (argued), Kellogg, for plaintiff-appellant.

Charles W. Hosack (argued), and Douglas G. Potter, Coeur d'Alene, for defendant-respondent.

SWANSTROM, Judge.

Richard Nordstrom, a logging contractor, sued Diamond International Corporation to recover lost profits allegedly caused by a breach of written and oral contracts to log in the Coeur d'Alene National Forest. The district court ruled that Nordstrom failed to prove the existence of an oral agreement. The court found that while Diamond suspended Nordstrom's log hauling for a time the suspension did not amount to a material breach which would allow Nordstrom to treat the written contracts as cancelled. The court denied any relief to Nordstrom and he has appealed. For reasons hereinafter stated we affirm the judgment.

The issues raised by Nordstrom can be grouped into those concerning the alleged oral contract, and those involving the written contracts. Concerning his proof of an

oral contract, Nordstrom contends the trial court erred by failing to consider evidence of part performance, of road building by Nordstrom, and of custom and practice in the logging industry. He also contends that his entitlement to damages is supported by promissory estoppel. Nordstrom further contends that Diamond's suspension of log hauling was a material breach of contract. He cites error by the court for failing to consider first whether the suspension was a breach, and second whether it was a material breach. He also argues that the court erroneously excused Diamond's performance under written contracts due to actions of third parties.

In 1972 Nordstrom contacted Diamond International Corporation about performing contract logging. Diamond manufactures lumber products. To supply its mills with timber, Diamond contracts with independent loggers to harvest both Diamond's private timber land and timber that Diamond purchases from the United States Forest Service (USFS). It was agreed that Nordstrom would log on Diamond's private land and on USFS sale land, both located on Teddy Creek. A written contract was executed which provided that Nordstrom would cut and deliver designated timber within the area for a one year term. The amount of timber was estimated, but not guaranteed, in the contract. Diamond was empowered to suspend the contract whenever enumerated contingencies occurred. Nordstrom was responsible for building spur roads linking the logging sites to main haul roads. By oral agreement, Diamond was to construct the main haul roads.

Things went well on the private land, but Diamond encountered problems getting the main haul road built for the Teddy Creek USFS sale. Consequently alternate haul roads were used and the written contract between Diamond and Nordstrom was modified several times to reflect the changes. Diamond also gave Nordstrom new written contracts, similar in form to the first contract, to log other USFS sales, one at Jack Creek and one at Ash Creek. Diamond finally engaged a road builder and started the main haul road on Ash Creek. The work did not progress well and the road could not be used for hauling. After the Forest Service approved an alternate route for Ash Creek, Diamond moved its road contractor to Teddy Creek.

In May of 1973 new contracts were entered to log the Ash Creek and Teddy Creek USFS sales. Because Diamond had not completed the main haul road, Nordstrom used the alternate route on Ash Creek. Late in the summer the forest service informed Diamond that, due to dry weather, hauling would have to cease unless Diamond would apply road oil or water to abate the dust. Diamond determined that the hauling prohibition would be of short duration because fall rains would be forthcoming and that it would be too expensive to apply dust abatement for such a short time. A Diamond field representative told Nordstrom to cease hauling. Nordstrom testified he was informed that the contracts were being terminated in order to give the work to another contractor. He abandoned the job site and did not return until after the hauling prohibition was lifted, and then only to remove timber he had previously cut and decked. Diamond denies terminating the contract and insists that the hauling stoppage was only a temporary measure taken to comply with Forest Service regulations.

Nordstrom sued Diamond, seeking the profit he would have derived had he been allowed to log the entire USFS Teddy and Ash Creek sales. These sales were large enough that it would have taken more than the one year provided in the written contracts. To support his claim to the profits, Nordstrom alleges that the one-year contracts merely represented Diamond's method of completing the overall oral contract with Nordstrom to log the entire sale. To prove the oral contract, Nordstrom presented evidence of his part performance, the fact that he had built spur roads beyond the areas covered by the written contracts, and custom and practice in the industry.

Nordstrom contends that the trial court ignored evidence that he began operating

after the oral agreement, but before any written contract was signed. This evidence, however, does not establish the terms of any oral agreement beyond those which were embodied in the subsequent written agreements. Further, Diamond denied any such oral agreement or knowledge that Nordstrom was working before the written contract had been executed.

■ Nordstrom presented evidence that he was required to build the spur roads a year in advance of their use. The evidence discloses that he did build spur roads throughout the sales areas. Payment for this work was incorporated into the contract rate for timber delivered to Diamond. Nordstrom contends that unless he logged an area and delivered the timber he was not fully compensated for his road building. Nordstrom argues that his road building shows the existence of an oral agreement to log the entire Ash and Teddy Creek sales, that it would be illogical to build roads not intended for use until after his contract expired. Diamond points out that Nordstrom was separately paid $16,000 for the road work in addition to the compensation for road building that was included in the payments he received for log deliveries. According to Diamond, many of the roads were merely "pioneered" by Nordstrom, meaning that the roads were cleared but needed more work to be useable. Thus, there was substantial evidence to support Diamond's contention that Nordstrom was fully paid for road building.

The advance road work done by Nordstrom is also used by him as support for his custom and practice arguments. He contends that it is the custom and practice in the logging industry that when a contractor is retained to work on a particular USFS sale he has a contract to log the entire sale. He points to deposition statements made by Diamond's logging superintendent that it is customary for an entire sale to be logged under a series of one-year contracts with a single contractor. Nordstrom argues that Diamond's habit of following this custom supports his claim that

on this occasion also an overall oral agreement was made. He cites the general rule that the custom and practice of a trade become part of a contract between parties within the trade having knowledge of the custom, unless the contrary appears. *Commercial Insurance Company v. Hartwell Excavating Co.*, 89 Idaho 531, 407 P.2d 312 (1965). However, Diamond's logging superintendent testified that the contractor does not obtain the right to log beyond the time designated, and that if the parties could not come to terms after one of the years, then Diamond would hire a different contractor. In this case, after Nordstrom stopped working on the Ash and Teddy Creek sales, Diamond did hire another contractor, but not until the specified time for performance of the written contract with Nordstrom had passed.

■ Custom and practice must be clearly proven, and if the evidence is uncertain and contradictory, as in this case, the custom is not established. *Martin v. Whiteley*, 89 Idaho 429, 405 P.2d 963 (1965). The trial court believed that the evidence showed, if anything, Diamond's custom to retain control over the quantity of timber harvested. The court concluded that Nordstrom's custom and practice argument was negated by the written contracts. The existence of a contract, when disputed upon conflicting evidence, is a question for the trier of fact. *Johnson v. Allied Stores, Corporation*, 106 Idaho 363, 679 P.2d 640 (1984). The trial court, sitting without a jury, ruled that Nordstrom had not proven the existence of the overall oral contract. This factual determination is not clearly erroneous, and therefore we will not disturb it. I.R.C.P. 52(a).

■ Nordstrom asserts the court erred in sustaining an objection to Nordstrom's testimony regarding custom during rebuttal examination. Diamond objected because the testimony was beyond the scope of the pleadings and cross-examination. The transcript discloses that the inquiry into custom was stopped because it went beyond the scope of cross-examination.

The judge acted within his discretion to do so. Moreover, we think the judge indicated—and Nordstrom's counsel recognized—that at the proper time evidence of custom and practice in the industry could be presented. No request was made to recall Nordstrom for this limited purpose. However, plaintiff's counsel was later permitted to inquire of another witness about the custom and practice of road building in Forest Service sales. No reversible error has been shown.

■ Nordstrom also argues that even if no express oral contract is found, he is entitled to his lost profits because Diamond promised him the work. In reliance on this promise Nordstrom bought equipment and hired a crew. The trial court ruled against Nordstrom on the promissory estoppel claim because, as with the oral contract, Nordstrom had not proven that the promise was made. Again, we cannot say that the trial court's finding is clearly erroneous. As proof of the promise, Nordstrom points to the undisputed agreement between the parties that Diamond would construct the main haul roads. However, we fail to see how this agreement supports the claim that Nordstrom was promised he could log both of the USFS sales in their entirety. We are not persuaded that the trial court erred in ruling on Nordstrom's promissory estoppel theory.

■ Nordstrom alleged that Diamond's field representative told him that the contracts were terminated in order to give the work to another contractor. Nordstrom claims punitive damages for this breach. Diamond denied terminating the contracts at all. The dispute revolves around what Nordstrom was told when he was ordered to cease hauling due to the forest service restriction. The trial judge concluded that Diamond had not terminated or repudiated the contract. Again, this conclusion flows from a factual determination which is supported by the evidence.

Last, then, are the written contracts themselves. Each provides that Diamond may suspend the contract whenever there is a labor strike or disabling fire at the mill site, or if the lumber market is depressed to the point Diamond has no need for the logs. The contracts recite the parties are to comply with USFS regulations. Each contract provides that Nordstrom would "cut, limb, skid, end-mark, bark mark, and deliver to Diamond" the merchantable timber within the contract areas designated to be cut.

As previously noted, in the summer of 1973 the USFS required Diamond to undertake dust control measures on a stretch of the Ash Creek haul route, or to cease hauling. Diamond directed Nordstrom to cease hauling, preventing Nordstrom from delivering the logs. Diamond does not seriously dispute that dust abatement, in this instance, would have been at Diamond's expense. Nordstrom argues that the risk of a hauling prohibition was on Diamond since it is not included in the list of reasons for which Diamond can suspend operation of the contracts. He contends that the court erred in failing to consider whether the haul stoppage was a breach of contract and the materiality of that breach. Further, Nordstrom argues that the court erroneously excused Diamond's obligation to provide a main haul route because of actions of the Forest Service and the road building contractors hired by Diamond.

The court ruled that the written contract gave each party wide latitude for dealing with unforeseen contingencies such as the USFS hauling prohibition. However, the testimony showed that such hauling restrictions are not uncommon or unforeseeable. Moreover, the USFS gave Diamond an option by which it could have satisfied USFS regulations in a way that would have allowed Nordstrom to continue hauling. We will therefore assume, without deciding, that the hauling suspension was a breach of the contract by Diamond. We note that the trial court impliedly ruled on the materiality of the breach in its memorandum opinion by stating:

Regardless of the merit of Nordstrom's contention that he was wrongful-

ly suspended, I cannot find that any such breach would entitle him to receive damages for a total breach under any theory that he has advanced. And, it is impossible to calculate damages for profit lost during the maximum period for which hauling was suspended (not more than two months).

We read this passage to indicate that any breach by Diamond was a minor breach which would not entitle Nordstrom to stop performing under the contract and sue for a total breach. We agree with this ruling. At best, Nordstrom could have sued for his damages caused by the hauling suspension. Instead, he sued for profits lost from not being permitted to log the entire Ash and Teddy Creek sales. Because he failed to prove his right to log the entire sales area under an *oral* contract, he did not prove his entitlement to the damages he presented. On the other hand, he did not attempt to prove the damages he may have sustained by being suspended for two months. Even if we were to consider the hauling suspension as a total breach of the *written* contracts, Nordstrom did not identify his damages proximately caused by that breach. *See* e.g., *Beare v. Stowes' Builders Supply, Inc.*, 104 Idaho 317, 658 P.2d 988 (Ct.App.1983). Since Nordstrom failed to prove his damages resulting from the alleged breach of the written contracts, it is unnecessary to address the argument that the court erroneously excused Diamond's performance due to the actions of third parties. The decision of the trial court is affirmed. Costs to respondent; no attorney fees awarded.

WALTERS, C.J., and BURNETT, J., concur.