# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34756

BRENDA BORAH,                                   )
                                                )
    Plaintiff-Respondent,            )          Boise, November 2008 Term
                                                )
v.                                              )          2009 Opinion No. 44
                                                )
DANA MC CANDLESS, d/b/a THE GREAT    )          Filed: April 2, 2009
SNAKE RIVER LOG HOME COMPANY,        )
                                                )          Stephen Kenyon, Clerk
    Defendant-Appellant.             )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable Kathryn A. Sticklen, District Judge.

The decision of the district court is <u>affirmed</u>.

Dunn Law Offices, Rigby, for appellant. Robin Dunn argued.

Gery W. Edson, Boise, for respondent.

_____

HORTON, Justice

This appeal arises from a contract for the sale of logs to be used in the construction of a cabin. Following a bench trial, the district court concluded that Appellant Dana McCandless breached the contract by failing to deliver the logs within a reasonable time and awarded damages and attorney fees to Respondent Brenda Borah. We affirm and award attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2004, Borah contacted McCandless, who operated under the name Great Snake River Log Home Company, to discuss the possibility of purchasing logs to build a cabin on a lot she owns in Camas County, Idaho. Borah intended to build the cabin with the help of relatives rather than buying a pre-built home or having a contractor build it. Borah and McCandless discussed what Borah would need from McCandless to complete her cabin, including logs, ridge beam, and purlins. In an email sent to Borah on March 31, 2004, McCandless indicated one truck load should be sufficient to deliver the entire cabin package. On April 21, 2004,

McCandless, via email, indicated to Borah that he could deliver the cabin package to her in July 2004 if she ordered it by the end of April.

McCandless sent Borah a pre-printed contract dated April 29, 2004, with a stated price of $24,250 for the cabin package. Borah received the contract in early May and requested McCandless to sell her additional logs for the gable and sides of the cabin. These additions raised the price to $27,100, and Borah changed the written document to reflect that increase. The contract called for an initial deposit of $16,975, and the terms were FOB Grangeville, Idaho, with Borah to pay for shipping to the Camas County site. No date for delivery was set in the document. Borah signed the contract on August 12, 2004, and McCandless signed it on September 22, 2004. The contract does not contain a merger clause; however, it does contain an arbitration clause.

On June 3, 2004, McCandless accepted a check from Borah for the full amount of the deposit. At that time, McCandless indicated that he would probably deliver the logs in early August, 2004, but possibly sooner. McCandless, however, delivered three loads of logs, on September 17, 2004, September 23, 2004, and October 30, 2004. The logs from these three deliveries left Borah well short of the total logs called for by the contract. The logs were worth $12,986.32.

After the October 30, 2004 delivery, weather prevented Borah from completing construction of the cabin until the following spring. Borah was obliged to winterize the part of the cabin which had been delivered at a cost of $632.79.

In November 2004, Borah proposed a final delivery date of June 1, 2005 for the remaining logs. McCandless responded in March 2005 and indicated he could deliver the remaining logs by May 15, 2005. McCandless failed to deliver on May 15, 2005, and the parties continued to discuss delivery dates. McCandless testified that he was willing and able to make final delivery by the end of June 2005 but that he declined to do so after receiving a letter from Borah's attorney on June 24, 2005. Borah apparently expected the delivery, as she rented equipment in early July 2005 in order to prepare for delivery of the logs. Borah's attorney sent another letter to McCandless, dated July 21, 2005, demanding final delivery. Still McCandless did not deliver and, in August 2005, Borah entered into a contract with Western Spirit Log Homes to purchase the logs necessary to construct the remainder of the cabin. Borah filed suit on August 31, 2005.

2

The district court found that McCandless had breached the contract without excuse by failing to deliver the logs within a reasonable time. The court found that the concept of cover applied and awarded Borah $3,208.56 for her cover damages. Both parties moved the court to reconsider this award. Upon recalculation, the court awarded Borah $15,199.80 in cover damages. The court also awarded Borah damages for the winterization costs and the July 2005 equipment rental. The court found Borah was the prevailing party and awarded her costs and attorney fees. McCandless timely appealed to this Court.

## II. STANDARD OF REVIEW

Review of a trial court's conclusions following a bench trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Benninger v. Derifield*, 142 Idaho 486, 488-89, 129 P.3d 1235, 1237-38 (2006) (citing *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991)). Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered. *Rowley v. Fuhrman*, 133 Idaho 105, 107, 982 P.2d 940, 942 (1999). This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous. *Ransom v. Topaz Mktg., L.P.*, 143 Idaho 641, 643, 152 P.3d 2, 4 (2006); I.R.C.P. 52(a). If the trial court based its findings on substantial evidence, even if the evidence is conflicting, this Court will not overturn those findings on appeal. *Benninger*, 142 Idaho at 489, 129 P.3d at 1238. Additionally, this Court will not substitute its view of the facts for that of the trial court. *Ransom*, 143 Idaho at 643, 152 P.3d at 4. This Court exercises free review over matters of law. *Bolger v. Lance*, 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002) (citing *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999)).

## III. ANALYSIS

As a preliminary matter, we must decide whether the district court had jurisdiction in light of the arbitration clause in the contract. If jurisdiction was proper, we must next examine whether the trial court erred in finding McCandless breached the contract without excuse. If we find he did so breach, we must then decide whether the trial court properly applied and calculated damages and whether its award of attorney fees to Borah was proper. Finally, we must decide if either party is entitled to attorney fees on appeal.

3

**A.   The district court properly exercised jurisdiction notwithstanding the arbitration clause.**

The contract signed by the parties contained the following arbitration clause:

> **G. ARBITRATION**
> All claims or disputes between the parties shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.  The award rendered by the arbitrator shall be final, and judgement [sic] may be entered upon it in accordance with the applicable law in any court of competent jurisdiction.  In the event of arbitration or suit, the prevailing party shall be entitled to recover its costs of arbitration or suit including, but not limited to, reasonable attorney fees.

In the proceedings before the district court, McCandless did not seek to compel arbitration nor did he plead the arbitration clause as an affirmative defense in his answer to Borah's complaint.  Indeed, at no point during the proceedings below did McCandless alert the district court to the existence of the arbitration clause.  Rather, only after unsuccessfully defending this action before the district court did McCandless first raise the issue before this Court.

Generally, appellate review is limited to those issues raised in the lower court and this Court will not decide issues presented for the first time on appeal.  *Barbee v. WMA Securities, Inc.,* 143 Idaho 391, 397, 146 P.3d 657, 663 (2006) (citing *Balser v. Kootenai County Bd. of Com'rs,* 110 Idaho 37, 40, 714 P.2d 6, 9 (1986)).  The question of jurisdiction is an exception to this general rule; this Court will address questions of jurisdiction, even if raised for the first time on appeal.  *Nycum v. Triangle Dairy Co.,* 109 Idaho 858, 862, 712 P.2d 559, 562 (1985); *Warren v. Sharp*, 139 Idaho 599, 602, 83 P.3d 773, 776 (2003).

McCandless concedes he did not raise this issue below, but argues that the arbitration clause in the contract deprived the district court of subject matter jurisdiction.  Although he advances this argument, McCandless has not supported his assertion by citation to legal authority that supports the proposition that a district court lacks subject matter jurisdiction to resolve a claim of breach of contract simply by reason of the existence of an arbitration clause.

In *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 735 P.2d 974 (1987), we had occasion to consider the effect of a party's delay of ten months between the initiation of litigation and a motion to compel arbitration.  We noted that "'[a]rbitration generally offers an inexpensive and rapid alternative to prolonged litigation.  It also serves to alleviate crowded

court dockets.' The policy underlying the enforcement of arbitration agreements or provisions in a written contract is rendered meaningless when the parties to such agreements proceed with the litigation process." *Id.* at 670, 735 P.2d at 981 (quoting *Loomis, Inc. v. Cudahy,* 104 Idaho 106, 108, 656 P.2d 1359, 1361 (1982)). We concluded that a party waives the right to compel arbitration "by submitting to the jurisdiction of the district court and proceeding with litigation in that court…." *Id.* In *Hansen*, we implicitly recognized that a district court has subject matter jurisdiction when a party has waived the benefit of an arbitration clause.

In *Lamell Lumber Corp. v. Newstress Intern., Inc.,* 938 A.2d 1215 (Vt. 2007), the Vermont Supreme Court addressed a situation similar to that presented in *Hansen*. In *Lamell Lumber,* the defendant actively participated in litigation for two years. Approximately one month before the scheduled trial, the defense moved for summary judgment, arguing that the parties' arbitration clause deprived the court of subject matter jurisdiction. *Id*. at 1218. The trial court rejected this contention, concluding that the defendant had waived the right to arbitration. *Id*. at 1219. Affirming this decision, the Vermont Supreme Court explained:

> "Subject matter jurisdiction" refers to the power of a court to hear and determine a general class or category of cases. In Vermont, the superior court is broadly vested with "original and exclusive jurisdiction of all civil actions," subject to certain specific exceptions not applicable here. 4 V.S.A. § 113. … For "courts of general jurisdiction ... the presumption is that they have subject matter jurisdiction ... unless a showing is made to the contrary." 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3522, at 60 (2d ed. 1984). …
>
> Notwithstanding its presumptively broad jurisdiction, defendant asserts that the superior court here lacked subject matter jurisdiction over plaintiff's contract and negligence claims as a result of the arbitration clause in the contract. Defendant relies on the [Vermont Arbitration Act] section authorizing the superior court to issue nine specific orders in relation to an agreement to arbitrate, including orders to compel arbitration, appoint arbitrators, confirm or vacate an arbitration award, and enter judgment on an award. … However, the superior court is presumed to retain jurisdiction over all civil actions unless the Legislature has clearly indicated to the contrary. Contrary to defendant's assertion, we find nothing … that suggests a legislative intent-implied or otherwise-to "oust" the superior court of general jurisdiction over a civil suit arising from a contract containing an arbitration agreement.
>
> Apart from the absence of any clear evidence of legislative intent, defendant's argument also lacks support in case law or other authority. Indeed, jurisdictional claims similar to defendant's have been uniformly rejected in other states. See, e.g., *Multi-Service Contractors, Inc. v. Town of Vernon,* 181 Conn. 445, 435 A.2d 983, 985 (1980) (reversing trial court's ruling that it lacked subject matter jurisdiction where agreement contained arbitration clause and holding that

arbitration proceeding was not a "condition precedent" to court action); *JKL Components Corp. v. Insul-Reps, Inc.,* 596 N.E.2d 945, 949 (Ind.Ct.App.1992) ("JKL cites no authority, and we can find none, to support its claim that a party's failure to arbitrate divests a trial court of jurisdiction over a breach of contract claim."); *Hanslin Builders, Inc. v. Britt Dev. Corp.,* 15 Mass.App.Ct. 319, 445 N.E.2d 188, 190 (1983) ("It is well settled that a clause providing for the resolution by arbitration of disputes arising under an agreement is not jurisdictional ....") (citations omitted); *Campbell v. St. John Hosp.,* 434 Mich. 608, 455 N.W.2d 695, 697 (1990) (holding that trial court was not deprived of subject matter jurisdiction over medical malpractice dispute subject to arbitration agreement); *State ex rel. Barden & Robeson Corp. v. Hill,* 208 W.Va. 163, 539 S.E.2d 106, 108 (2000) (observing that "an agreement to arbitrate a dispute does not divest a court of subject matter jurisdiction").

*Id.* at 1219-20.

The constitution of this state provides that "[t]he district court shall have original jurisdiction in all cases, both at law and in equity." Idaho Const. art. V, § 20. "State courts have subject matter jurisdiction over traditional contract actions, a garden variety matter of state common law." *Sinclair & Co., Inc. v. Gurule,* 114 Idaho 362, 364, 757 P.2d 225, 227 (Ct. App. 1988). There is nothing in the Uniform Arbitration Act, I.C. §§ 7-901 – 922, that reflects legislative intent to deprive courts of subject matter jurisdiction in civil cases involving contracts containing an arbitration clause. We conclude that McCandless has waived his right to rely on the parties' arbitration clause and that the district court had subject matter jurisdiction to resolve Borah's claim that McCandless breached the contract.

**B. The district court did not err in concluding that McCandless' performance was not excused by the letter he received from Borah's attorney on June 30, 2005.**

McCandless claims that he did not breach the contract; rather, Borah breached the contract when she "fired" him by way of a letter sent by her attorney on June 24, 2005 and that he "could not work for [Borah] not knowing if she was going to pay for the services and materials." After receiving the letter, McCandless cancelled his order for Borah's logs from his supplier.

A material breach by one party will allow the other party to rescind the contract. *Ervin Const. Co. v. Van Orden*, 125 Idaho 695, 700, 874 P.2d 506, 511 (1993). A material breach is more than incidental and touches the fundamental purpose of the contract, defeating the object of the parties entering into the agreement. *Id.* Generally, unless the facts presented are undisputed,

6

whether there was a breach of the terms of a contract is a question of fact. 23 RICHARD A. LORD, WILLISTON § 63:15 (4th ed. 2002); 17A Am. Jur. 2d Contracts § 591; *see also Sorensen v. Pickens*, 99 Idaho 564, 585 P.2d 1275 (1978) (holding that a question of breach of warranty of habitability is for jury). Whether such a breach is material is also a factual question. 23 RICHARD A. LORD, WILLISTON § 63:15 (4th ed. 2002); 17A Am. Jur. 2d Contracts § 591; *Ervin Const. Co.*, 125 Idaho at 700, 874 P.2d at 511.

The district court recognized McCandless' claim that he was "fired," but did not make express findings regarding McCandless' assertion that the letter was a material breach of the contract. However, the district court implicitly found that the letter was not a material breach, as the court concluded that "McCandless did not make delivery within a reasonable time and therefore breached the contact [sic] without excuse." In such instances, we will examine the record to determine whether there is substantial and competent evidence to support the district court's implicit factual findings. *See, e.g., Walker v. American Cyanamid Co.,* 130 Idaho 824, 830, 948 P.2d 1123, 1129 (1997); *see also Nordstrom v. Diamond Int'l Corp.*, 109 Idaho 718, 722-23, 710 P.2d 628, 632-33 (1985) (holding trial court's ruling that plaintiff was not entitled to damages for total breach of contract was implied finding that the breach was not material).

We have carefully examined the letter and attendant circumstances. The letter pointed out that although the logs were to have been delivered by August 2004, Borah was still waiting for delivery and demanded delivery by July 1, 2005. The letter promised payment of the balance of the contract price from Borah's attorney's trust account upon confirmation that the logs were loaded in Grangeville. The letter cannot be reasonably read, in any fashion, as suggesting that Borah no longer expected McCandless to perform his duties under the contract or that she was refusing to pay for the logs. The attendant circumstances also reflect Borah's continued expectation of McCandless' performance: in early July, she rented equipment in anticipation of delivery of the logs. On July 21, 2005, Borah's attorney again wrote to McCandless, identifying the logs needed to complete the contract. Thus, we conclude that substantial competent evidence supports the district court's implicit finding that the letter of June 24, 2005 was not intended to terminate McCandless' duties under the contract.

In addition to claiming that he was "fired," McCandless also asserts that he was excused from performing because of the parties' dispute over delivery charges. The June 24, 2005 letter advanced Borah's position that McCandless' claim for delivery charges were subject to an offset:

7

My client has obtained two independent bids for the delivery of the remaining logs which were due last year. Had the material been delivered on schedule, it would have taken no more than two semi loads of product for delivery at a cost of $1,000 per load. As you are well aware, my client paid a log handler approximately $1,500 last year awaiting your delivery of logs which were never delivered. These claims are mutually offsetting pursuant to Idaho contract law.

Again, the district court did not address whether Borah's claim for offset was a breach of the parties' contract.[1] It is clear that the district court implicitly found that any breach was not material. There is substantial evidence to support this finding.

The contract price for the log cabin package was $27,100. McCandless claimed Borah owed him $3,351 in delivery charges. This claim was based on three shipments of logs. As the district court stated:

[T]he parties' contract implied that there would only be one delivery of logs since the agreement specifically stated that the remaining payment . . . was due upon delivery. The testimony also supports the fact that one or, at the most, two deliveries were discussed by the parties at the time of contracting. McCandless provided no itemization of the delivery costs he incurred, and therefore the Court could not calculate the amount he might have been entitled to receive under the contract.

The delivery charges claimed by McCandless represented only a small fraction of the total contract price contemplated by the parties, and the charges were based on more deliveries than the parties had intended and were not itemized. It is clear that the district court found that the delivery charges that McCandless would have been entitled to, but for his failure to itemize his claimed damages, were substantially less than his claim for $3,351. We conclude that there is substantial evidence to support the district court's implicit finding that Borah's claim of offset was not a material breach of contract.

McCandless protests that the evidence of preliminary negotiations regarding the number of deliveries was extrinsic to the contract and should not have been admitted. McCandless did not make this objection at trial, and thus this claim has not been preserved for appeal. *Slack v. Kelleher*, 140 Idaho 916, 921, 104 P.3d 958, 963 (2004). Regardless, the evidence regarding how many deliveries were contemplated when the parties made the contract is not barred by the parol evidence rule. That rule allows for the admission of evidence of agreements made prior to

---

[1] It is questionable whether advancing the claim for offset for a portion of the delivery charges was a breach of the parties' contract. The letter from Borah's attorney did not contain an unequivocal refusal to pay any and all delivery charges. However, we will assume for purposes of this analysis that this claim rose to the level of a breach.

or contemporaneously with the contract as long as they are consistent with the terms of the contract and as long as the written contract was not intended as a complete and exclusive statement of the terms of the agreement. I.C. § 28-2-202(b); *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 179, 595 P.2d 709, 713 (1979).

The contract in this case did not contain a merger clause to indicate that it was meant as the complete and exclusive statement of the terms. Furthermore, I.C. § 28-2-202 was "intended to liberalize the parol evidence rule and to abolish the presumption that a writing is a total integration" and "requires that the court make a definite finding that the parties intended a total integration before consistent additional terms are to be excluded." *Anderson & Nafziger*, 100 Idaho at 180, 595 P.2d at 714. The district court made no finding that the contract was integrated. We conclude that the district court did not err by considering extrinsic evidence relating to the number of contemplated deliveries.

**C. The district court did not err in concluding that McCandless breached the contract by failing to deliver the logs within a reasonable time.**

The district court concluded that since the contract did not specify a time for delivery of the logs, pursuant to I.C. § 28-2-309(1) the time for delivery should be a reasonable time. The court then relied on I.C. § 28-1-205 (formerly I.C. § 28-1-204) and our decision in *Anderson & Nafziger v. G.T. Newcomb, Inc.*, to reach the conclusion that "McCandless did not make delivery within a reasonable time and therefore breached the contact [sic] without excuse."

On appeal, McCandless asserts that the district court erred in its consideration of parol evidence regarding the formation and performance of the contract. He further maintains the earliest date the contract was formed was in September 2004 when he signed it, and further argues that, based on this formation date, he would not have been in breach if he had delivered the logs by June 30, 2005 as he had planned to do before receiving Borah's June 24, 2005 letter. Borah responds that McCandless failed to object to this evidence at trial and thus failed to preserve this issue for appeal. Borah further argues that evidence extrinsic to the contract was necessary because the contract failed to specify a delivery date.

"Generally, this Court will not consider an alleged error on appeal unless a timely objection to the alleged error was made at trial." *Slack*, 140 Idaho at 921, 104 P.3d at 963 (quoting *State v. Sheahan,* 139 Idaho 267, 277, 77 P.3d 956, 966 (2003)). At the outset of the proceeding below, the parties stipulated to all of Borah's exhibits being admitted into evidence

9

upon the condition, urged by McCandless, that the trial court give proper weight to those exhibits relevant to the issue of Borah's damages. McCandless made no objection below to any evidence regarding formation or performance of the contract nor did he object to evidence about delivery. Indeed, McCandless introduced much evidence on these very subjects. We conclude that McCandless has failed to preserve his claim of erroneous admission of parol evidence.

Furthermore, this claim of error is incorrect. This is because the contract contained no term for date of delivery, and even "assuming arguendo that I.C. § 28-2-202 bars admission of any representations as to an orally agreed upon delivery date," courts must still "look to the provisions of the Uniform Commercial Code to supply the missing term." *Anderson & Nafziger*, 100 Idaho at 181, 595 P.2d at 715.

Idaho Code § 28-2-309(1) instructs that if there is no delivery date in the contract, the time shall be a reasonable time. I.C. § 28-1-205 (formerly I.C. § 28-1-204) specifies that what is a reasonable time "depends on the nature, purpose and circumstances of such action." The Court in *Anderson & Nafziger* elaborated: "In determining the issue of reasonability, factors such as the nature of the goods to be delivered, the extent of the seller's knowledge of the buyer's intentions, transportation conditions and the nature of the market should be considered." 100 Idaho at 181, 595 P.2d at 715. The district court applied these factors to the facts of the instant case:

> Here, there was nothing particularly unique about the goods, except that McCandless thought he could get them at a reduced cost. McCandless was aware that Borah wanted the cabin "dried in" before winter of 2004. He had indicated on several occasions that the logs could be delivered in order to meet this deadline. Again in 2005, McCandless indicated the remaining logs could be delivered on May 15, 2005, but again failed to deliver even by July 1, 2005. McCandless did not make delivery within a reasonable time and therefore breached the contact [sic] without excuse.

McCandless points out that he did not sign the contract until September 2004 and that there was no dispute between the parties as late as May 2005; he argues thus that the district court's finding he had breached as early as July 1, 2005 was arbitrary. This argument is unpersuasive when viewed in light of the evidence that McCandless took a down payment for nearly 70% of the contract price in June of 2004, made numerous representations that the logs were coming, and yet failed to deliver the entire cabin package by July 1, 2005. Any negotiations that occurred in 2005 merely represented efforts by Borah to secure compliance

with the contract that she had been told would be completed in 2004. The district court's finding that McCandless breached the contract by failing to deliver the logs within a reasonable time is supported by substantial evidence.

**D. The district court correctly determined damages.**

McCandless argues that the trial court miscalculated cover damages and erred in awarding Borah damages for equipment rental and winterization.

Idaho Code § 28-2-711 addresses the remedy for buyers in Borah's position and provides in relevant part that:

> (1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 28-2-612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid
> > (a) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract . . . .
> > I.C. § 28-2-712 explains the concept of "cover" and the appropriate measure of damages:
>
> > (1) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
>
> > (2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (section 28-2-715), but less expenses saved in consequence of the seller's breach.

McCandless breached the contract by failing to deliver the logs within a reasonable time. Borah waited for delivery of a complete log cabin package for over a year after paying McCandless nearly 70% of the $27,100 contract price. Her attorney sent two letters requesting delivery, the later of which was dated July 21, 2005. On August 4, 2005, approximately two weeks after McCandless failed to respond to this last letter, Borah signed a contract with Western Spirit Log Homes for the balance of logs she needed to complete her cabin. McCandless does not argue that this cover purchase was not made in good faith, or that it was made after unreasonable delay, or that it was in any way unreasonable. Thus, the district court correctly awarded damages for Borah's cost of cover.

11

McCandless also argues that the district court erred in calculating cover damages when it failed to credit McCandless with the proper amount for usable logs and services he provided. However, the district court, in its second calculation, did use the amount suggested by McCandless for the value of the usable logs delivered. We can find no error in the district court's computation of cover damages.

McCandless argues that the district court "altered" the contract by failing to credit him with delivery charges he incurred. The district court declined to do so because McCandless' failure to provide an itemization of his claimed delivery expenses deprived the district court of the ability to calculate the delivery charges to which he was entitled. This was not error. McCandless bore the burden of presenting sufficient evidence to permit the district court to calculate the amount due to him under the contract. *See, e.g., Trilogy Network Systems, Inc. v. Johnson,* 144 Idaho 844, 847-48, 172 P.3d 1119, 1122-23 (2007).

Finally, McCandless protests the district court's award of damages to Borah for money she spent on equipment in anticipation of logs that McCandless never delivered as well as on labor and supplies to winterize the portion of the cabin that was delivered in 2004. McCandless claims these expenses were beyond the scope of the contract and that he "had nothing to do with the building or stacking of the logs or of rental equipment. . . ." While McCandless is correct that the contract did not call for him to take actions regarding winterization of the cabin or renting equipment, his premise that the scope of his contractual duties limits the damages which Borah may properly recover is incorrect. I.C. § 28-2-712(2) allows for a seller in Borah's position to recoup cover damages as well as incidental and consequential damages as defined by I.C. § 28-2-715. Under I.C. § 28-2-715(1), incidental damages resulting from the seller's breach include "any reasonable expense incident to the delay or other breach." *Keller v. Inland Metals All Weather Conditioning, Inc.*, 139 Idaho 233, 240, 76 P.3d 977, 984 (2003). Idaho Code § 28-2-715(2) provides that "[c]onsequential damages resulting from the seller's breach include . . . [a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . . ." McCandless has not shown that the district court erred in its determination that Borah was entitled to an award of winterization and rental equipment costs as incidental and consequential damages.

**E.  Attorney fees before the district court.**

Based upon his arguments that the district court erred, McCandless claims that he is entitled to an award of attorney fees incurred below.  As McCandless has not demonstrated error below, he is not entitled to a remand of this action for an award of attorney fees.

**F.  Borah is entitled to attorney fees on appeal.**

Both parties have requested attorney fees on appeal pursuant to I.C. § 12-120(3), as this was a commercial transaction.  Further, the parties' contract provides, in relevant part:  "In the event of arbitration or suit, the prevailing party shall be entitled to recover its costs of arbitration or suit including, but not limited to, reasonable attorney fees."  Borah is the prevailing party in this appeal and thus entitled to an award of attorney fees and costs.

## IV. CONCLUSION

The district court properly exercised jurisdiction and correctly found that McCandless breached the contract by failing to deliver the logs within a reasonable time.  The district court did not err in its damage award.  Attorney fees and costs are awarded to Respondent.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.