**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 41306

GREGORY HULL, )
)
    Plaintiff-Counterdefendant-Respondent, )
) **Twin Falls, June 2014 Term**
v. )
) **2014 Opinion No. 81**
RICHARD B. GIESLER and IDAHO TRUST )
DEEDS, LLC, ) **Filed: August 6, 2014**
)
    Defendants-Counterclaimants- ) **Stephen W. Kenyon, Clerk**
    Appellants. )
)

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

District court decision on a contract, <u>affirmed</u> in part, <u>vacated</u> in part and <u>remanded</u> for further proceedings.

Wright Brothers Law Office, PLLC, Twin Falls, for appellants. Andrew B. Wright argued.

Terry Lee Johnson, Twin Falls, argued for respondent.

_____

BURDICK, Chief Justice

Richard Giesler and Idaho Trust Deeds, LLC (collectively "Giesler") appeal the Twin Falls County district court's judgment declaring the rights and obligations on a contract. This case arose out of several oral and written agreements between Giesler and Gregory Hull that related to purchasing and subdividing property. After a bench trial, the court found that Hull sold the property to Giesler, but the parties had a later oral contract where Hull promised to pay off Giesler's loans in exchange for half of the subdivision's net profits. The court held that neither party materially breached the contract and ordered Hull to timely pay Giesler's loans and Giesler to complete the subdivision within certain deadlines. On appeal, Giesler argues Hull failed to prove damages and the district court's remedies were erroneous. We affirm the district court in part, vacate in part, and remand for further proceedings.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Richard Giesler was friends with Gregory Hull for about twenty years. Hull owned 147 acres of farmland irrigated by a pressurized sprinkler system. Hull also owned water shares appurtenant to that land. In 2005, Giesler began negotiating with Hull to acquire a portion of the 147 acres. The parties ultimately entered into a Purchase and Sale Agreement for all 147 acres.

That Purchase Agreement provided that Hull agreed to sell Idaho Trust Deeds, LLC, approximately 150 acres for $375,000. Giesler is the sole owner of Idaho Trust Deeds, LLC. The Purchase Agreement had a section called "Included Items," which stated the purchase price included "[a]ll existing fixtures and fittings that are attached to the property" and "all water systems, wells, spring water that are now on or used in connection with the premises…" In addition, the agreement noted the sale included "[i]rrigation fixtures and equipment, and any and all, if any, water and water rights, and any and all, if any, ditches and ditch rights that are appurtenant thereto that are now on or used in connection with the premises." The agreement also covered attorney's fees: "If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney fees, including such costs and fees on appeal." Finally, the agreement included a merger clause:

> 27. ENTIRE AGREEMENT: This agreement, including any Addendums or exhibits, constitutes the entire Agreement between the parties and no warranties, including any warranty of habitability or representations have been made or shall be binding upon either party unless herein set forth.

Both parties signed the agreement.

Before closing, Hull and Giesler signed an addendum that extended the closing date, specified the land was 147 acres, and reduced the price to $367,500. Giesler paid $367,500 in cash at closing. Giesler borrowed $183,748 of that amount from D.L. Evans Bank in four loans. These loans were to be paid over 15 years and carried variable interest rates. The total annual payment on those loans was $20,107.46, due April 20. Hull later signed a warranty deed that conveyed the property to Giesler. The deed does not reference irrigation equipment.

Sometime after closing, Giesler agreed to give Hull a contingent half interest in the 147 acres. His December 2007 handwritten notes stated, "Closing – I told Greg he would get back ½ interest in the property if he paid back the $186,014 loan I took out to purchase the property and made the payments on time." Hull stayed on the property on an oral agreement to farm the land

2

in exchange for paying Giesler rent. Before March 2006, Hull agreed to accept $200,000 from Giesler for Hull's interest in half the profits of 40 of the 147 acres. Giesler paid the $200,000 to Hull.

After Giesler developed those 40 acres, the real estate market took a turn for the worse. Giesler platted part of the remaining 107 acres and drafted a subdivision plan. Giesler never developed the 107 acres. In 2012, Giesler told Hull he owned the entire 107 acres and tried to evict Hull from the property. That same year Hull removed all the irrigation equipment from the property. That equipment was composed of equipment Hull had used on the property, as well as excess pipe that Hull used on other land he owned.

On May 23, 2012, Hull filed a verified complaint against Giesler that alleged Hull held an undivided half interest in the 107 acres, title to the property was held in trust, and Hull was wrongfully evicted. Giesler raised statute of frauds and merger as defenses. Giesler also counterclaimed, alleging (1) breach of contract because Hull did not pay Giesler for rent, loans, and other farm expenses; (2) conversion because Hull took irrigation equipment that Giesler owned; and (3) unlawful detainer because Hull stayed on the property.

Hull served Giesler interrogatories on December 24, 2012, and March 22, 2013. After Hull filed a motion to compel a response, Giesler responded to both sets of interrogatories on April 29, 2013. On May 10, 2013, Hull filed a motion to amend his complaint.

Hull's amended complaint added an implied in law contract claim that alleged Giesler was to develop the 147 acres into a subdivision and Hull would receive one-half share of the subdivision's market value when completed. Hull alleged that Giesler unjustly retained Hull's half share because he failed to proceed further after developing the first 40 acres. Hull requested the court give Hull his half share in the property by using partition or the current market value. Hull stated that he added this claim to reflect what he understood the agreement was after discovery.

Giesler objected and alternatively filed a motion to vacate the trial date. Giesler argued that Hull's new claims left Giesler without time to prepare for trial. The court granted Hull's motion to amend at a pretrial conference. At that conference, the court noted that current real estate valuation was not an issue, but if it became an issue the court would bifurcate that issue into another trial. The case went to trial on June 4, 2013.

3

After trial, the district court held that all of Hull's legal interest in the property transferred to Giesler by the Purchase Agreement and warranty deed. The court stated that any discussion about Hull owning the property merged into the deed. But the court also found that Hull and Giesler entered into a verbal agreement after the sale with mutual consideration. The agreement was that Giesler would develop 147 acres at his own cost and give Hull half the subdivision's profits. In exchange, Hull would pay the $186,014 in D.L. Evans loans that Giesler took out to pay for the property. Hull made these payments to Giesler and not directly to D.L. Evans. Hull made most of his checks to Giesler without specifying "D.L. Evans" in the memo line. The court also noted that Giesler had already bought out Hull's interest in 40 of the 147 acres for $200,000, which left 107 acres subject to the oral agreement.

The court then found both parties breached the oral contract, but neither breach was material. First, Hull breached the contract by not making his D.L. Evans loan payments on time. Second, Giesler breached the contract by not taking reasonable steps to move forward with the subdivision within a reasonable time. The district court then noted that because these breaches were non-material, Hull's contractual rights could be preserved by a court order. The court also found that the value of the property's irrigation equipment, not including the excess pipe, was $25,122. The court ordered Hull to reimburse Giesler for half of that value as conversion damages, as that equipment would have been sold as part of the subdivision and half of the value would have then belonged to Hull.

The district court then ordered further remedies. The court ordered Giesler to develop the remaining land and give Hull half of any profits, while Hull was ordered to timely pay the D.L. Evans loans. The court specified that if Hull failed to timely pay the loans, then he forfeited his expectancy interest in the subdivision's profits. As long as Hull paid the loans, the court ordered Giesler to complete all infrastructure to make the subdivision marketable and zoning compliant. The court specified that Giesler would develop the 107 acres in three phases in three years. The first phase involved Parcel 1, a part of the 107 acres that was north of the 40 acres already developed. Giesler platted Parcel 1 into 17 lots, which he stated he could develop "anytime." Giesler also got a two year extension from Twin Falls County on Parcel 1's final plat approval. The court required that Giesler complete this phase by July 31, 2014. The second phase required Giesler to develop Parcel 2 by July 31, 2015. This parcel was to the west of Parcel 1. Giesler had not platted Parcel 2. The third phase required that Parcel 3 be developed by July 31, 2016.

4

Giesler had drafted a subdivision plat for Parcel 3, but testified that he was unsure whether he had lost the Twin Falls County entitlements to Parcels 2 and 3. The court prohibited Giesler from encumbering the property without consent from Hull or the court.

After setting these timelines, the court ordered Giesler to take reasonable efforts to sell the lots and to give Hull half the net profits of each sold lot. The court defined net profits to mean the gross sales price of each lot less selling costs, less the original land acquisition price, less the pro rata share of development costs for each lot, plus the value of the irrigation equipment normally liquidated as the land was converted into housing lots. However, the court noted this definition did not foreclose other unidentified costs related to development.

The court also detailed what would happen if Giesler did not develop the subdivision. First, Hull could stop his loan payments. Second, (a) the 107 acres would be listed for sale, (b) the proceeds divided equally, and (c) Giesler would not be reimbursed for his development costs. The court also provided that if there was still farmable ground, an independent third party would farm for cash rent with the parties splitting the costs and dividing any net profits. Finally, the court ordered that the judgment should be recorded as an encumbrance on the property. The court noted that the parties should take all reasonable steps necessary to clear title for all lots sold under the judgment.

The court gave this judgment a I.R.C.P. 54(b) certificate. Giesler timely appealed.

## II. ISSUES ON APPEAL

1. Whether substantial and competent evidence supports the district court's judgment.
2. Whether the district court erred in its remedy.
3. Whether either party is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

This Court's review of a trial court's conclusion after a bench trial is limited to whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009). The trial court's province is to weigh conflicting evidence and testimony and to judge the credibility of witnesses, so this Court liberally construes the trial court's findings of fact in favor of the judgment entered. *Id.* This Court will not set aside these findings of fact unless the findings are clearly erroneous. *Id.* When the trial court based its findings on substantial evidence, this Court will not overturn those findings on appeal even if the evidence is conflicting. *Id.* Evidence is

substantial if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *In re Williamson*, 135 Idaho 452, 454, 19 P.3d 766, 768 (2001). This Court exercises free review over questions of law. *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 908, 188 P.3d 846, 850 (2008).

## IV. ANALYSIS

Giesler's arguments fit into two categories: (1) disputes over the district court's findings of fact and (2) disputes over whether the court could add deadlines and forfeitures in its judgment.

### A. Substantial and competent evidence supports the district court's findings of fact.

Giesler requests that this Court (1) reverse the district court to the extent the court held Hull retained an interest in the 107 acres and (2) dismiss all relief to Hull and clear title to the property. Giesler also requests that this Court remand and instruct the district court to enter judgment against Hull for failure to prove damages with reasonable specificity and failure to prove reasonable development timeframes. All of Giesler's requests are based upon a challenge to the district court's findings of fact.

1. The court found two contracts.

The district court held there were two contracts. The court held the first contract transferred to Giesler the title to the 147 acres, irrigation equipment, and 147 water shares. That written contract included the Purchase Agreement, warranty deed, and closing statement. Because the contract had a merger clause, the district court found that any oral agreements that Hull asserted were disavowed by the contract. The court also held any agreement had merged into the deed.

The district court also found a second contract that took place after the first contract. That contract was an oral agreement that Hull would get half the profits generated by the sale of developed lots in exchange for timely paying Giesler's D.L. Evans loans. The court stated that "the parties intended to grant Hull a conditional undivided interest in the property but not an undivided legal interest." The court noted Hull had an equitable interest in the property in the form of an interest in profits. The district court found a meeting of the minds because the parties agreed on the profits contract's material provisions. The district court also found mutual consideration: Giesler promised to develop the subdivision at his cost and contribute his land, and Hull promised to repay the D.L. Evans loans as they became due. Part of that contract was

6

performed when Giesler paid Hull $200,000 for 40 of the 147 acres, which left 107 acres subject to the oral agreement.

Neither party directly disputes the court finding of these two contracts. Instead, Giesler misunderstands what the court held; he argues the court held that Hull kept an equitable interest in the property itself despite Hull conveying all of his interest to Giesler when he sold the property under the first contract. Giesler bases this understanding on the court's statement that the record supported Hull's assertion that he retained some type of legal interest in the property. The court also stated that "Hull has an equitable interest in the 107 acres." But the court specified that Hull's interest was "not in the title to the property but rather in the profits that might be generated upon the sale of developed lots." Thus, the court did not hold that Hull retained any interest in the property itself after the first contract and instead focused on Hull's interest in the profits from the property. Hull's interest was essentially in personal property, not a land interest. Thus, the district court did not clearly err in these findings.

2. The district court found a non-material breach.

The district court then found both parties breached the contract, but neither breach was material. The court determined Hull made his payments to Giesler for Giesler's D.L. Evans loans, but breached the contract because those payments were untimely. Giesler argues Hull failed to meet his burden of proving that the payments were for the D.L. Evans loans because it was impossible to tell exactly what debt the non-memorialized payments went towards, as these checks were simply made out to Giesler without any specific language noting "D.L. Evans" in the memo line. Giesler also argues that Hull did not make his payments on time.

The district court noted the parties' conflicting testimony over the D.L. Evans loans: Hull asserted that he made all of his payments to Giesler, while Giesler asserted that Hull made none of the payments. The court observed that the parties provided accountings that were result oriented and "not contemporaneous with anything they actually intended regarding how Hull's payments were applied." The court also noted that "Giesler's assertion that Hull did not make any payments on the D.L. Evans loan is simply not credible." Overall, the court found Hull paid Giesler enough to be current on the D.L. Evans loan payments, given that during that timeframe Hull owed Giesler $140,752 for D.L. Evans loan payments and Hull paid Giesler $146,851 with non-memorialized checks. The court considered Hull's non-memorialized checks applied to the D.L. Evans loans. These checks, the overall amount paid, Hull's testimony that he paid the loans,

and the court's finding that Giesler did not credibly assert Hull paid none of the loans support the district court's finding that Hull made his payments on the D.L. Evans loans. The district court weighs the evidence and determines credibility, and the court could reasonably conclude Hull made the payments without actually tracing each payment to the loans. Thus, the district court did not err when it found that Hull paid his obligations on the loans.

Next, the district court found Hull breached the agreement by failing to pay on time, but found the breach was not material. "Whether a breach of contract is material is a factual question." *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 700, 874 P.2d 506, 511 (1993). A material breach of contract "touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." *Id.* at 699, 874 P.2d at 510. There is no material breach of contract where a party substantially performs. *First Sec. Bank of Idaho, N.A. v. Murphy*, 131 Idaho 787, 792, 964 P.2d 654, 659 (1998). "Substantial performance is performance which, despite a deviation from contract requirements, provides the important and essential benefits of the contract to the promisee." *Id.*

The court went through a detailed analysis of Hull's checks to Giesler for each year and analyzed how those checks impacted the timeliness of Hull's payments. The court noted that while Hull was not always timely, he had paid the amount required and Giesler waived any time requirements by accepting those payments and cashing Hull's checks. Because Hull and Giesler both testified that the contract's main purpose was to split the subdivision's profits and that Giesler continued to cash the checks, substantial evidence supports the court's finding that the breach was not material. Also, Giesler did not allege any foreclosure or late fees as damages resulting from Hull's late payment.

The district court also found Giesler had immaterially breached the contract by failing to take reasonable steps to move forward with the subdivision within a reasonable time. This finding is supported by evidence that Giesler lost the right to plat some of the property and spent no money on infrastructure. Giesler testified that he could start to develop Parcel 1 "anytime," but instead had failed to move forward. However, the court also noted that until recently the market for new homes and subdivisions was stalled and deflated. This is substantial evidence that Giesler breached the agreement, but it was not material. Thus, we find substantial evidence supports the court's decision that the parties non-materially breached the contract.

8

3. The district court ordered the parties to continue their obligations under the contract.

Giesler contends the district court ignored this Court's damages requirement because the court only found an approximation of damages. Giesler also argues that Hull did not meet his burden of proving damages to a reasonable certainty. Breach of contract requires "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co.*, 154 Idaho 269, 278, 297 P.3d 232, 241 (2013). The plaintiff has the burden to prove that he was injured and his injury was the result of the defendant's breach; "both amount and causation must be proven with reasonable certainty." *Harris, Inc. v. Foxhollow Constr. & Trucking, Inc.*, 151 Idaho 761, 770, 264 P.3d 400, 409 (2011).

Here, the court did not require Hull to prove damages because it declared the parties' duties under the contract. The court's pretrial order specifically noted real estate value was not an issue at trial. The court noted at the pretrial conference that it would bifurcate the trial as to damages that required real estate valuation, only reaching that issue if necessary. The court's statements at trial also support interpreting the district court's judgment as a contractual accounting. The court stated, "why shouldn't I enter a judgment for [Hull] that certif[ies] look, he has an interest in this property, and it consists of half the net profit and the subdivision sells out." After Giesler noted that no damages evidence was before the court, the court replied, "[o]ther than a declaration that he's still entitled to half the profits when those lots ultimately settle." Also, the court did not need to find the property value and calculate net profits because the contract had not yet been materially breached. Instead, the judgment outlining Hull's duty to pay the loans and Giesler's duty to develop the subdivision is a contract accounting that allowed the parties to continue performance. Thus, Hull did not need to prove damages to a reasonable certainty because the court did not determine damages. The court's contract interpretation/accounting is supported by substantial and competent evidence.

4. Irrigation equipment.

In 2012 Hull removed all irrigation equipment from the property. That equipment was composed of equipment Hull had used on the 147 acres since 2005, as well as excess pipe that Hull used on other land he owned. At trial, Hull withdrew his claim to the excess pipe and focused only on the pipe used on the 147 acres. The district court held the equipment used to water Giesler's land was valued at $25,122, which neither party disputes on appeal.

9

However, at issue are the district court's two findings about how the equipment's value would be allocated. First, the court factored the irrigation equipment into its calculation of net profits. The court defined net profits as the gross sales price of each lot less selling costs, less the original acquisition price, less the pro rata share of development costs for each lot, plus the pro rata value of the irrigation equipment normally liquidated as the land was converted into housing lots. Second, the district court awarded Giesler half the irrigation equipment's value as conversion damages because that equipment would have been part of the gross income generated by the subdivision. The district court reasoned that the equipment would have eventually been sold as part of the subdivision if Hull had not removed it, so the court ordered Hull to reimburse Giesler half of the equipment's value. In sum, the district court (1) awarded Giesler half the irrigation equipment's value now and (2) ordered the pro rata value of that equipment be factored into the future net profits calculation. Giesler challenges both findings.

Giesler argues that the district court erred in including the equipment's pro rata value in its net profits calculation because there is no evidence that the parties ever intended that the equipment's value would be considered in the net profits calculation. However, trial testimony directly contradicts this argument. In response to the court's question of whether Hull would get credit for half the sprinkler pipe, Giesler replied, "Yeah, he would." Giesler then explained that the equipment  "would be sold off as you went, and then when you say get credit, it would go in to offset expenses…." In other words, Giesler himself stated that Hull would get the value of liquidated irrigation pipe as a credit against the subdivision's expenses. This is substantial and competent evidence to support the district court's finding that the equipment would have been sold as part of the subdivision. It follows that the value should be included in the net profits calculation.

Giesler also contends the district court erred in its net profits calculation because the equipment was not a fixture. However, the district court never found that the equipment was moveable or a fixture. In addition, this argument is foreclosed by the fact that Giesler's oral contract with Hull included liquidating the equipment and using those returns to offset expenses. So, despite the fact that Giesler owned the equipment after the Purchase Agreement, the second contract included selling the equipment.

Giesler also contends that the district court granting Hull half of the equipment's value as conversion damages now means Giesler is paying twice for the equipment: Giesler paid once

when the court returned only half the equipment's value after Hull's conversion and Giesler will pay again when the equipment's value is calculated into net profits. Giesler contends the court should instead credit the equipment's total $25,122 value back to him. Indeed, the fact that the district court awarded Hull half the value of the equipment after Hull's conversion is at odds with its finding that Hull's half of the net profits will include the value of the liquidated irrigation equipment. Under Giesler and Hull's oral contract, half of the equipment's value cannot be credited to Hull now because net profits will not be calculated until the time the subdivision lots are sold. Because the oral contract provided that the pipe would be liquidated as the lots were sold, the value of the pipe must be determined at that time. Thus, we vacate the district court's order for Hull to pay Giesler half the irrigation equipment's value and remand for the court to order a judgment consistent with this opinion.

## B. The district court erred in its remedies.

After the district court ruled on the oral contract, it moved on to remedies. The court reasoned that Hull's request for the equitable remedies of land partition or a trust was unnecessary because the parties had an express contract governing their legal rights. Equitable remedies are not available where the aggrieved party has a plain, speedy, adequate, and complete remedy at law. *Suchan v. Rutherford*, 90 Idaho 288, 295, 410 P.2d 434, 438 (1966). In addition, the district court found rescission was inappropriate because neither party's breach was material. Rescission is available "only when one of the parties has committed a material breach which destroys the entire purpose of entering into the contract." *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 700, 874 P.2d 506, 511 (1993). Hence, the court properly denied these remedies.

The district court instead based its order upon each party's contractual obligations. The court specified that if Hull did not timely pay the loans, then he forfeited his expectancy interest in the subdivision's profits. As long as Hull paid the loans on time, the court ordered Giesler to complete the subdivision's infrastructure to make it zoning compliant and marketable. The court specified that Giesler would complete three portions of the 107 acres within the next three years. The court gave Giesler one year to develop Parcel 1, another year to develop Parcel 2, and a third year to develop Parcel 3. After ordering these deadlines, the court ordered Giesler to take reasonable efforts to sell the lots and to give Hull half the net profits of each sold lot. The court prohibited Giesler from encumbering the property without Hull or the court's permission.

11

The court also specified consequences if Giesler did not fully perform. First, Hull could stop his loan payments. Second, Giesler's 107 acres would be listed for sale and the proceeds would be divided equally between the parties without reimbursing Giesler's development costs. The court also provided that if Giesler did not develop the land and there was still farmable ground, an independent third party would farm for cash rent with the parties splitting the costs and dividing any net profits. Finally, the court stated that the judgment would be recorded as an encumbrance on the property. The court noted that the parties should take all reasonable steps necessary to clear title for all lots sold under this judgment. Overall, the district court's judgment included: (1) deadlines for Giesler to develop portions of the 107 acres and (2) consequences if either materially breached the contract.

Hull and Giesler disagree over what the court ordered. Giesler asserts the court improperly blended remedies from two separate contracts and ordered specific performance. Giesler argues that the district court erred because (1) neither party had notice of specific performance because that relief was not requested at trial, (2) specific performance was an inappropriate equitable remedy, and (3) the court could not re-write the contract by imposing timelines and penalties. Hull contends that the district court focused on the second contract and used each party's obligations under that contract instead of ordering specific performance.

1. The district court could select its remedy based upon the pleadings.

Giesler argues neither party requested the relief the court granted because Hull's amended complaint did not plead breach of contract or seek strict performance. Hull argues that Giesler had notice because Hull's complaint included a contract implied in law and a broad relief claim, and at trial he made Rule 15(b) motion to conform the pleadings to the evidence. Thus, the issues are (1) whether Hull's amended complaint raised the breach of contract issue and (2) whether the parties tried the issue by express or implied consent.

The district court granted Hull's motion to amend his complaint. Hull's amended complaint asked the court for several forms of relief, including legal title to the property and possession of the property under a trust. Hull also asked the court to find an implied in law contract where he had a one-half undivided interest in the property. Based on that claim, Hull requested that the court require Giesler to return Hull's half share in the property by partition or pay Hull the current market value of his half interest. Hull's amended complaint additionally requested "all other relief that the court deems just and equitable in the premises."

12

A contract implied in law "is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties and, in some cases, in spite of an agreement between the parties." *Cont'l Forest Prods., Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974). This type of contract is also called quasi contract, unjust enrichment, or restitution, and is "a non-contractual obligation that is to be treated procedurally as if it were a contract . . ." *Id.* Because Hull's claim was for a contract implied in law, Hull asked the court to find an obligation without looking to the parties' intent or agreement. Thus, Hull's amended complaint did not ask the court to find a contract and or give the parties notice that breach of an express contract was at issue.

However, litigants may try an unpleaded issue by express or implied consent. *M. K. Transp., Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980). Idaho Rule of Civil Procedure 54(c) states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Rule 15(b) states: "When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." An unpleaded issue not tried by either express or implied consent cannot be the basis for a court's decision. *M. K. Transp., Inc.*, 101 Idaho at 349, 612 P.2d at 1196. This ensures that "the parties have notice of the issues before the court and an opportunity to address those issues with evidence and argument." *Id.* An unpleaded issue is not tried by express or implied consent when nothing in the record indicates the issue was litigated at trial. *Id.* Whether the parties tried an unpleaded issue by consent is within the trial court's discretion. *Smith v. King*, 100 Idaho 331, 335, 597 P.2d 217, 221 (1979).

Giesler emphasizes that merely presenting evidence relevant to breach of contract without objection was insufficient because the parties did not understand the evidence was aimed at that issue. However, the parties did more than merely present evidence. Giesler testified that he had a deal where Hull would share the subdivision's profits if Hull paid the D.L. Evans loans. Neither party objected to this testimony. In fact, the district court asked Giesler several questions about the profits contract. Neither party objected. There was also testimony about the loans that went to the contract's terms and whether there was a breach. Thus, both parties were on notice that the issue was whether a contract was breached. The district court granted Hull's motion to amend the pleadings to conform to the evidence, remarking that it did not think Hull's motion

13

changed any theories of the case. Giesler did not object. Because this testimony shows both parties understood at trial that they had a contract to share in the subdivision's profits, Giesler had notice that a contract was in dispute.

The remaining question is whether both parties had notice the court could declare contractual duties and order remedies. Giesler argues that Hull's broad request for relief does not mean he has the burden to counter every possible remedy that Hull's pleading omitted. Even when a possible remedy is not specifically requested, a party can be on notice when that remedy follows from an issue tried by express or implied consent. *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 911, 188 P.3d 846, 853 (2008). In *O'Connor*, a plaintiff sued a construction company for breach of contract and the defendant raised mutual mistake as a defense. *Id.* The Court held the plaintiff had notice that rescission was a possible remedy even though it was not specifically plead because mutual mistake was tried by consent. *Id.* The court reasoned that rescission was an appropriate remedy because the plaintiff had the opportunity to try the issue of whether a mutual mistake of fact existed, in which one of the potential remedies is rescission. *Id.* Here, the parties tried the breach of contract issue, where one possibility is neither party materially breached the contract. Both parties therefore had notice that the court could find that neither party materially breached the contract and declare rights under the contract. Thus, the court could find Giesler had a duty to develop the subdivision.

2.  The court's remedy was inappropriate.

After the court determined each party's contractual obligations, it specified that Giesler would complete three portions of the 107 acres within the next three years. The court gave Giesler one year to develop Parcel 1, another year to develop Parcel 2, and a third year to develop Parcel 3. The court also specified that if Giesler did not fully perform by meeting these deadlines or taking reasonable steps to sell the developed lots, then Hull could stop his loan payments and the 107 acres would be listed for sale. Any sale proceeds would be divided equally between the parties without reimbursing Giesler's development costs. Finally, the court stated the judgment would be recorded as an encumbrance on the property. The court noted that the parties should take all reasonable steps necessary to clear title for all lots sold. Overall, the district court's judgment included: (1) deadlines for Giesler to develop portions of the 107 acres and (2) consequences if either materially breached the contract.

14

Giesler argues that the district court erroneously reformed the subdivision contract when it added these deadlines and penalty clauses. He also argues the district court ordered specific performance when legal remedies were available. Finally, Giesler argues that the district court erroneously fashioned remedies based on Giesler's ownership of the land because those remedies infringe on Giesler's right to use, encumber, and transfer the land.

*a. The district court's development deadline for Parcel 1 was supported by substantial evidence, but the deadlines for Parcels 2 and 3 were not supported by substantial evidence.*

Giesler argues that adding terms to the contract was impermissible reformation. Courts do not have the power to rewrite contracts in order to make them more equitable. *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 362, 93 P.3d 685, 693 (2004). A court can reform a contract when a term is unconscionable, but cannot reform a term simply to make a contract fairer. *See id.* at 365, 93 P.3d at 696. However, when parties to a contract have not agreed to a term essential to determine their rights and duties, the court supplies a term reasonable in the circumstances. *Restatement (Second) of Contracts* § 204 (1981). "Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 318, 233 P.3d 1221, 1240 (2010) (quoting *Curzon v. Wells Cargo, Inc.*, 86 Idaho 38, 43, 382 P.2d 906, 908 (1963)); *See also Haines v. City of New York*, 364 N.E.2d 820, 822 (N.Y. 1977) ("In the absence of an express term fixing the duration of a contract, the courts may inquire into the intent of the parties and supply the missing term if a duration may be fairly and reasonably fixed by the surrounding circumstances and the parties' intent."). The court noted that the parties never agreed on Giesler's timeframe to complete the subdivision. Thus, the district court could supply a reasonable time for performance to the contract as long as there is evidence in the record about when the parties intended the contract to be completed.

Giesler argues that the court's deadlines are unreasonable because insufficient evidence supports these timeframes. Whether these timeframes are reasonable is a question of fact, and we review whether the district court's findings of fact are supported by substantial and competent evidence. *See McCormick Int'l USA, Inc. v. Shore*, 152 Idaho 920, 925, 277 P.3d 367, 372 (2012). The court noted Giesler's testimony that he could complete the 17 platted lots on Parcel 1 "anytime." Giesler emphasized that he was current with planning and zoning and "all I have to do is put in the improvements, and can I do that, I can start that any time." Giesler noted that he

15

had final plat approval for Parcel 1. He also testified that he had secured a two year delay on Parcel 1 with Twin Falls County, so he could start on the improvements within two years. This evidence supports a one year timeframe.

Other testimony conflicts with a one year development timeframe. Hull testified that developing the first 40 acres was a two year process. Hull also stated that he understood the subdivision's phases would be completed every two to three years, with eight to ten years total to complete the entire subdivision. Hull admitted that he had only a basic knowledge of developing subdivisions and was not very familiar with how the process worked. However, the fact that Giesler was eight years into the project and could start "anytime" is substantial evidence that the court ordering Parcel 1 completed nine years after the parties' agreement was reasonable. Thus, substantial evidence supports that one year was a reasonable time to develop Parcel 1.

The court also held that Parcel 2 must be developed a year after Parcel 1, and Parcel 3 within a year after Parcel 2's deadline. The court found this reasonable given that the project had entered its eighth year. However, the evidence does not support these timeframes. Giesler testified that he had never agreed or discussed a development timeframe with Hull. Giesler testified about steps he had taken on Parcels 2 and 3, but never addressed about how long he needed to develop Parcels 2 and 3. Giesler also specified that his two year delay on the county's final plat approval related to Parcel 1 and that it was possible he had lost the entitlements to Parcels 2 and 3. Evidence that Giesler could start "anytime" is limited to Parcel 1. Because Hull's testimony that the development would take eight to ten years is the only evidence that supports the court's timeframes for Parcels 2 and 3, there is not substantial and competent evidence to support the district court's finding. While Giesler does not get a complete do-over where he could start the contract again, there is not substantial evidence in the record to support the district court's deadlines for Parcels 2 and 3. Thus, we remand to the district court for proceedings consistent with this opinion.

*b. The district court could not order property sale and encumbrances.*

Giesler asserts that court ordered specific performance was inappropriate because legal remedies applied. Giesler also argues the court's remedy created unenforceable penalties. This Court's basic rule "is that equity will not intervene where the aggrieved party has a plain, speedy, adequate, and complete remedy at law." *Suchan v. Rutherford*, 90 Idaho 288, 295, 410 P.2d 434, 438 (1966). "Specific performance is an extraordinary remedy that can provide relief when legal

16

remedies are inadequate." *Fullerton v. Griswold*, 142 Idaho 820, 823, 136 P.3d 291, 294 (2006). Hull and Giesler disagree over what type of remedy the court ordered. Because the district court stated that it fashioned remedies "based on each party's contractual obligations" after a non-material breach, and the parties had an express contract that cannot offer equitable remedies, the court did not order specific performance. Instead, this is a contract accounting.

Additionally, the court declared consequences of a future material breach, including the forfeiture of Hull's money paid on the D.L. Evans loans and the sale of Giesler's property. Giesler contends that if the district court had simply re-written the contract, then there could not have been forfeiture. The district court did not articulate any basis to include any forfeiture as a contract term. Although the law does not favor forfeitures, courts will generally uphold contracts that expressly provide for forfeitures. *Hardy v. McGill*, 137 Idaho 280, 287, 47 P.3d 1250, 1257 (2002). However, forfeitures must strictly follow the contract terms. *Id.* Nothing in the parties' testimony indicates that they agreed that forfeiture was required upon a material breach. The district court also did not indicate that it was acting in equity to declare specific performance upon future breach. Thus, the court could not impose future consequences upon a future breach. Instead, upon any future alleged breach the parties will need to return to court for that court to determine whether a breach occurred, whether that breach was material, and the damages.

Even if the district court could add forfeiture terms to the contract, the terms the court added impermissibly punish Giesler for not continuing the contract. Courts "refuse to enforce contract clauses that appear designed to deter a breach or to punish the breaching party rather than compensate the injured party for damage occasioned by the breach." *Melaleuca, Inc. v. Foeller*, 155 Idaho 920, 927, 318 P.3d 910, 917 (2004) (quoting *Magic Valley Truck Brokers, Inc. v. Meyer*, 133 Idaho 110, 117, 982 P.2d 945, 952 (Ct. App. 1999)). When forfeiture is "simply a penalty invoked as a result of conduct of one of the parties, the forfeiture will not be allowed." *Foeller*, 155 Idaho at 927, 318 P.3d at 917 (quoting *Fleming v. Hathaway*, 107 Idaho 157, 161, 686 P.2d 837, 841 (Ct. App. 1984)). Here, if Giesler breaches the contract, Giesler loses his development costs and the property will be listed for sale. This seems designed only to persuade Giesler to complete the contract, and therefore would be an unenforceable penalty clause.

Finally, Giesler argues that the district court erroneously infringed on Giesler's fee ownership rights to use, encumber, and transfer the 107 acres. Giesler argues when the court

ordered that Giesler could not further encumber the property without permission and that the judgment was to be recorded as an encumbrance on the property, the court gave Hull back an interest in the property instead of the profits. Because we hold the district court was limited to declaring the rights and duties under the contract, the court could not order encumbrances on the property itself. Encumbering the property and limiting Giesler's ability to further encumber the property is another consequence of a future contract breach. These consequences were not included in the oral contract. Thus, we vacate the court's remedies that contain consequences that are not part of the original oral profit-sharing contract and remand for the court to enter a judgment consistent with this opinion.

Despite the fact that we remand this case in part, we would like to recognize the district court's efforts. Both Hull and Giesler misunderstood the issues during trial, as neither party clearly focused on the second profit-sharing contract. The district court itself asked the parties about this profit-sharing contract to clarify the issues. Despite all of the confusion, the district court conducted a detailed and thorough analysis in its decision. The district court sifted through numerous facts and crafted these facts into a clear outline of the parties' rights and obligations. While the court's remedies went beyond the contract, we commend the court's work in distilling the dispute into a coherent decision.

## C. Neither party is entitled to attorney fees on appeal.

Giesler argues he is entitled to attorney fees under the Purchase Agreement, Idaho Code section § 12-120(3), and Idaho Code section § 12-121. Hull requests attorney fees under Idaho Code section § 12-120(3), and Idaho Code section § 12-121.

Hull prevailed on whether the district court's judgment was supported by substantial and competent evidence. Giesler prevailed on whether the judgment contained an unenforceable penalty clause. Thus, neither party prevails on appeal and neither is entitled to attorney fees.

## V. CONCLUSION

We vacate the following portions of the district court's decision: (1) the conversion payment of half the irrigation equipment's value; (2) the deadlines for completing Parcels 2 and 3; and (3) the provisions that order consequences to encourage performance under the contract. We affirm the remainder of the court's judgment. We remand to the district court to enter orders or conduct further proceedings consistent with this opinion. Neither party is awarded attorney fees or costs on appeal.

18

Justices EISMANN, J. JONES and HORTON **CONCUR.**