**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51475**

| | |
|---|---|
| SHANE ROY NEEDHAM,<br><br>      **Petitioner-Appellant,**<br><br>v.<br><br>**JANET LEA NEEDHAM,**<br><br>      **Respondent-Respondent on**<br>      **Appeal.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Filed:  March 19, 2025**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED**<br>**OPINION AND SHALL NOT**<br>**BE CITED AS AUTHORITY** |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County.  Hon. John C. Judge, District Judge.  Hon. Megan E. Marshall, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, vacating in part and affirming in part a judgment for contempt and vacating a judgment regarding attorney fees and costs, <u>affirmed</u>.

Arkoosh Law Offices; Rachelle Smith, Boise, for appellant.  Rachelle Smith argued.

Ludwig, Shoufler, Miller, Johnson, LLP; Jordan S. Ipsen, Boise, for respondent. Jordan S. Ipsen argued.

_____

LORELLO, Judge

Shane Roy Needham appeals from a decision of the district court, on intermediate appeal from the magistrate court, vacating in part and affirming in part a judgment for contempt and vacating a judgment regarding attorney fees and costs.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2021, Shane and Janet Lea Needham divorced pursuant to a stipulated judgment and decree.  A few months later, the parties amended the decree after it was discovered that the wrong judgment had inadvertently been submitted (amended decree).  In September 2021, the

1

parties made additional changes to the decree and entered an agreed judgment modifying child custody and child support (agreed judgment).

In March 2022, Janet initiated contempt proceedings against Shane, alleging he violated one provision in the amended decree and two provisions in the agreed judgment. Following a contempt trial, the magistrate court found Shane guilty of three counts of contempt for violating provisions of the amended decree and the agreed judgment and imposed civil sanctions. The magistrate court also ordered Shane to pay Janet a total of $40,650.22 in attorney fees and costs. Shane subsequently appealed the magistrate court's findings of fact and conclusions of law to the district court.

On intermediate appeal, Shane challenged the sufficiency of the evidence supporting the magistrate court's findings that he violated the terms of the amended decree and the agreed judgment. Shane also argued the magistrate court abused its discretion in imposing sanctions and awarding Janet attorney fees and costs. The district court vacated in part and affirmed in part the magistrate court's judgment for contempt. Specifically, the district court vacated the judgment as to the first count of contempt, concluding the magistrate court's finding of guilt was not supported by substantial and competent evidence. As a result, the district court vacated the award of attorney fees and costs pertaining to the first count of contempt. However, the district court affirmed the magistrate court's judgment as to the second and third counts of contempt, determining that substantial and competent evidence supported the magistrate court's findings of guilt. Shane again appeals.[1]

## II.

### STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal

---

[1]    Neither party challenges the district court's decision on appeal related to the first count of contempt. As a result, we do not address the district court's decision vacating the judgment as to the first count and vacating the related award of attorney fees and costs.

2

will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

Shane challenges the sufficiency of the evidence supporting his contempt convictions, arguing there is insufficient evidence to support the magistrate court's finding beyond a reasonable doubt that he violated the terms of the agreed judgment. Shane further argues the district court erred in affirming the magistrate court's contempt convictions. In response, Janet asserts the magistrate court's contempt convictions are supported by substantial and competent evidence and that the district court did not err in affirming the magistrate court's findings of fact and conclusions of law. We hold that Shane has failed to show there is insufficient evidence to support his contempt convictions.

### A. Contempt

A court has the power to hold in contempt any person who willfully disobeys a specific and definite order of the court. *In re Weick*, 142 Idaho 275, 281, 127 P.3d 178, 184 (2005). To justify an order of contempt, "one's violation of a court order must be willful." *Id*. at 280-81, 127 P.3d at 183-84. To find that a person willfully disobeyed a court order, "the order must be clear and unequivocal." *Thompson v. Bybee*, 161 Idaho 158, 160, 384 P.3d 405, 407 (Ct. App. 2016). To be clear and unequivocal, a court order must command a person to do or refrain from doing something. *Id*. "If an order does not command a person to do or refrain from doing something, disobedience of the order is impossible." *Id*. Idaho Rule of Civil Procedure 75 governs contempt proceedings and distinguishes between civil sanctions and criminal sanctions. I.R.C.P. 75(a). A civil sanction is conditional, which means the contemnor can avoid the sanction by doing the act he or she was previously ordered to do. I.R.C.P. 75(a)(6). A criminal sanction is unconditional, meaning the contemnor cannot avoid the sanction entirely or have the sanction cease by complying with a prior court order. I.R.C.P. 75(a)(7).

A trial court's determination that an individual is guilty of contempt beyond a reasonable doubt is reviewed for substantial evidence. *Katseanes v. Katseanes*, 171 Idaho 478, 486, 522 P.3d 1236, 1244 (2023). Where there is conflicting evidence, it is the trial court's task to evaluate the

3

credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). Evidence is substantial if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

In her motion for order of contempt, Janet alleged three counts of contempt based on violations of three provisions contained in the amended decree and the agreed judgment. Relevant to this appeal, the second count alleged Shane violated a provision of the agreed judgment when he failed to pay his share of their child's orthodontic expenses and the third count alleged Shane violated the terms of the agreed judgment when he made negative and derogatory comments about Janet during his interview on *The Fathers Truth* podcast.[2] Shane argues the magistrate court erred when it found him guilty of both of these counts and that the district court erred in affirming the magistrate court's convictions. We address each of Shane's arguments in turn.

### 1. Payment for child's orthodontic treatment

In April 2021, the parties agreed that one of their children needed to be seen by an orthodontist to determine whether he needed braces. Shane initiated the care by taking the child to an orthodontic consultation. After the consultation, Shane was provided with a financial agreement outlining the estimated cost of the treatment. Shane advised Janet of the consultation and indicated he was willing to move forward with the treatment. Shane also asked Janet whether she would be willing to pay her one-half of the total cost of the procedure and expressed his desire to schedule future appointments himself. In response, Janet indicated she was willing to pay her share of the treatment costs and scheduled the child's first appointment thereafter. At the child's appointment, in order to receive a 5 percent discount, Janet paid the full treatment cost, which was based on the terms of the financial agreement Shane previously sent to her. This was the same approach the parties used for their other children's similar orthodontic treatments in the past. After the treatment, both parties shared in scheduling and taking the child to his follow-up appointments. Janet eventually filed a motion for contempt, alleging Shane violated the terms of the agreed

---

[2] At the time of the interview, the podcast was called *Fathers Lives Matter* but has since been renamed to *The Fathers Truth*.

judgment "by failing to pay his one-half of orthodontic expenses for the parties' minor child" in the sum of $2,351.25.

The magistrate court found that the language of the agreed judgment was unambiguous and required "the parties be responsible for their one-half share of all deductible and non-covered medical expenses for orthodontic costs incurred for the children." The magistrate court further found that the agreed judgment was "unequivocally clear that each party shall pay their respective one-half upon presentation of such expense to the other party." According to the magistrate court, the parties agreed to the treatment, and Shane "had knowledge of the treatment cost as he attended the consultation and received the financial breakdown directly from" the provider, which "he then provided to" Janet. The magistrate court disagreed with Shane's argument that, because the agreed judgment required Janet to present the expense to him and because she failed to do so, he cannot be held in contempt. The magistrate court determined that, while Janet did not present her receipt of payment to Shane, he "cannot feign ignorance" because he attended the child's "future appointments and certainly knew the treatment was not free." The magistrate court also noted that Janet's full payment of the treatment benefited Shane by reducing overall costs for both parties.

According to the magistrate court, Shane was trying "to hide behind the 'presentation' language of the agreed judgment to escape contempt when he was the party who 'presented' the expense to" Janet and subsequently failed to pay his one-half share to her. The magistrate court therefore determined that Shane "knew what his one-half share was because he provided the financial agreement to" Janet. Accordingly, the magistrate court found Shane guilty of the second contempt count beyond a reasonable doubt. However, because Shane paid Janet his one-half share of the child's orthodontic treatment after she filed her motion for contempt, the magistrate court declined to impose any sanctions relating to this count. The magistrate court did, however, award Janet attorney fees related to her pursuit of this count of contempt.

On intermediate appeal, the district court affirmed the magistrate court's findings of fact and conclusions of law, concluding they were supported by substantial and competent evidence. Additionally, the district court indicated Shane's argument that the magistrate court could not impose a sanction against him on this count was "puzzling since the magistrate elected not to impose any sanction [because] Shane ultimately did pay his one-half share." As such, the district

5

court determined the magistrate court did not err when it exercised its discretion and declined to impose a sanction.

On appeal, Shane argues the magistrate court erred in finding him guilty of the second count of contempt because the relevant provision of the agreed judgment is ambiguous and can be interpreted in different ways. According to Shane, the agreed judgment "is not specific or definite since it did not provide a timeframe for the presentation or subsequent payment, nor does it state who is to be paid after the presentation of the bill." We disagree.

Divorce decrees are interpreted according to the same rules of construction that apply to contract interpretation. *Bromund v. Bromund*, 167 Idaho 925, 932, 477 P.3d 979, 986 (2020). As such, analysis of the terms of a divorce decree begins with the four corners of the document. *Id*. If the language of the decree is clear and unambiguous, the analysis comes to an end. *Id*. The relevant provision of the agreed judgment reads:

> All deductibles and non-covered medical expenses, including but not limited to . . . orthodontic . . . expenses incurred for the children shall be divided equally between the parties. Each party shall pay their respective one-half of such expenses within 14 days of presentation of a statement for said expense.

Contrary to Shane's argument, the language of the agreed judgment is clear and unambiguous and requires each party to pay their respective one-half share of any deductibles or noncovered medical expenses for their children. The agreed judgment also mandates the parties pay their respective share of such expenses within fourteen days of "presentation" of the expense. Although Shane takes issue with the lack of express guidance in the agreed judgment on "what should happen when one parent pays the entire portion and fails to present the expense to the non-incurring parent, even though the non-incurring parent had knowledge" of the treatment, it follows that a party must pay his or her one-half share of the medical expense by reimbursing the paying party. The term "presentation" is not ambiguous on its face or as applied in this case. Moreover, Shane's argument contradicts itself--he admits knowing about the child's orthodontic treatment as the "non-incurring parent" but later claims he was unaware Janet "paid the bill in full or had any expectation he would need to pay her instead of the provider."

Shane's argument that he did not willfully violate the agreed judgment "because no one presented him with a final expense" is also unpersuasive. The argument is premised on Shane's belief that, because Janet failed to present him the expense for the child's treatment, Shane was

6

not required to pay his one-half share of the treatment cost. However, the magistrate court found that it was Shane who presented the expense to Janet via the financial agreement which estimated the total treatment cost. Shane's emphasis that the financial agreement "was not binding as the terms were not final" does not alter the magistrate court's finding that Shane was informed of the child's total treatment cost.

At oral argument on this appeal, Shane asserted that Janet "withheld" information regarding her payment of the orthodontic bill despite his request for such information, which he claimed was reflected in email exchanges between the parties. No such emails appear in the record. The evidence in the record includes an April 29, 2021, email from Shane to Janet indicating that the child's appointment with the orthodontist "went well," that Shane "approved of [the child] getting the standard braces," asking Janet if she also approved of the "procedure," asking if she "approve[d] of paying for one half of the procedure," and advising her to let him know and he would "set up the accounts and appointments." A June 30, 2021, email from Janet indicates that "summer is a good time" for the child to get braces, that she would "go ahead and make that appointment," and that she would pay her one-half and "leave it up to [Shane] to pay [his] half." Shane responded the same day: "Per my email to you on April 29th I wanted to setup [sic] the appointments and schedule for [the child's] orthodontist. Also, [p]lease ask me in advance if you decide to schedule appointments on my time. You have scheduled dentist [sic] for both boys and orthodontist for [another child] on my time in June." There are no emails in the record that support Shane's assertion that he sent emails to Janet requesting additional information regarding payment that Janet "withheld."

The magistrate court's finding that Shane was guilty of contempt for violating the terms of the agreed judgment by failing to pay his share of the child's treatment cost is supported by substantial and competent evidence, and the district court did not err in affirming the magistrate court.

### 2. Shane's podcast interview

In December 2021, Shane participated in an hour-long interview on *The Fathers Truth* podcast, which was broadcasted live on Instagram. Shane promoted his upcoming podcast interview on his social media profile, encouraging his followers to tune in live. Shane's children were among his social media followers when he promoted his interview. At the time of the trial,

7

the interview had approximately 297 views and was posted on *The Fathers Truth* social media account for public access. In her motion, Janet alleged Shane was in contempt for violating the terms of the agreed judgment by speaking of her in a negative and derogatory way during the podcast interview.

At trial, a licensed psychologist with a doctorate in clinical child psychology and over thirty years of experience testified about the potential impact the interview could have on the children. After reviewing a transcript of the interview, the expert witness testified that, on at least thirty-three separate occasions, Shane "used inflammatory, critical, hurtful, demeaning, and derogatory statements about his ex-wife and his children's mother," Janet. The expert witness cited the following statements by Shane to support his conclusions:

> [Shane] made remarks throughout the interview that [Janet] was adulterous, has mental health issues and alcohol problems, that she parties with her children, she walked away from God, she never said sorry or showed remorse, she uses drugs, she does not follow court orders, she did not inform him of appointments, she is entitled, she physically and verbally abused him, she is co-dependent, she is crazy, she suffers from malicious mother and golden uterus syndromes, she didn't work hard and used him for his money, she was a covert narcissist, she would bring strange men around, and she was engaged in stalking.

The magistrate court noted Shane's statement during the interview that he wanted his children to know this story because, in his view, they were old enough to know it and he "did not want them to have to wait thirty years to hear it like he waited to hear about his own mother." The magistrate court found the plain language of the agreed judgment specifically, and without exception, prohibited Shane from speaking about Janet in the way he did. While it is true that Shane never called Janet by her name during the interview, the magistrate court found he did not need to because Shane only has one ex-wife and his children only have one mother. As such, the magistrate court determined Shane's comments could only be referring to Janet.

The magistrate court recognized that Shane may have a right to free expression of his ideas but found his comments about Janet to be "more than speaking freely about why fathers' lives matter." The magistrate court determined, "it is one thing to go on a podcast and talk about your experience as a father or your experience with the court system in a custody case, but that is not what [Shane] did here." According to the magistrate court, not only did Shane engage in an interview via social media in an attempt to estrange his children from Janet, "or at a minimum, to

8

injure their love for her, he actively discouraged a sincere respect for her." The magistrate court determined that, if Shane "wished for unrestrained ability to speak negatively about [Janet], he should not have agreed to the language in the agreed judgment." Accordingly, the magistrate court determined that Shane's interview "clearly violated the agreed judgment" and found him guilty of the third contempt count beyond a reasonable doubt.

The magistrate court ordered Shane to remove the video post of his interview, "and any reference thereto, from any and all social media accounts." Additionally, the magistrate court ordered Shane to take all possible steps to have the interviewer, creator, promotor, or poster immediately remove the interview from all social media platforms. The magistrate court also awarded Janet attorney fees and costs related to this count of contempt. After it determined that the magistrate court's finding of guilt was supported by substantial and competent evidence, the district court affirmed on intermediate appeal. The district court also determined Shane's argument that the magistrate court abused its discretion by not imposing a fine or jail time and instead ordering him to remove the video of his interview was "nonsensical." According to the district court, the magistrate court's order that Shane remove the video of the interview from his social media and make every effort to have the interview removed from *The Fathers Truth* social media platforms was "not a sanction (i.e., punishment); it was simply a command that Shane comply with the agreed judgment." The district court therefore concluded that the magistrate court did not abuse its discretion in ordering Shane to comply with the agreed judgment.

On appeal, Shane contends the magistrate court erred in finding him guilty of the third count of contempt because the agreed judgment does not clearly or unequivocally command Shane "to do or refrain from giving a podcast interview and/or speaking publicly about his marriage" and experience with the family court system. According to Shane, because the agreed judgment does not prohibit him from "speaking the truth about his marriage and his experience through the court process," he cannot be found guilty of willfully violating a court order. Shane's argument is not based on law or fact because a court order can be clear and unequivocal without listing every possible scenario that would violate the language of the order.

The language of the provision at issue provides:

> Neither parent shall attempt, or condone any attempt, directly or indirectly, in person, via social media posts, or otherwise, to estrange the children from the other parent, or to injure or impair the love and affection of the children for the

9

other parent. At all times, the parents shall encourage and foster in the children sincere respect and affection for both parents.

The agreed judgment prohibits Shane from giving a public interview, shared on social media where the parties' children can easily access it, wherein he speaks negatively of Janet both as a wife and as a mother. With legal representation, Shane agreed to the terms of the agreed judgment and should have known that the conduct he engaged in was prohibited. Shane's argument to the contrary on appeal is without merit. Moreover, Shane's assertion that it was the owners of the podcast who posted his interview to their own social media account and that he "cannot be found guilty of contempt for a third party's actions" does not comport with the facts of this case. In addition to Shane knowingly and voluntarily participating in the interview in the first instance, the record shows that he advertised the interview on his social media and encouraged individuals to watch. The parties' children were among Shane's followers at that time.

Additionally, Shane's argument that the magistrate court's finding of guilt is not supported by substantial and competent evidence because he did not intend or "attempt to estrange the children from [Janet] or injure the love and affection between [Janet] and the children" is unpersuasive. Regardless of what Shane intended on achieving from his interview, it is undisputed that he willfully gave a public interview (which he advertised on his social media) wherein he disparaged Janet. The interview was accessible to the parties' children and, at the outset of the interview, Shane indicated his desire to share his story with his children. At trial, expert witness testimony confirmed the obvious--that the statements Shane made about Janet, if heard by the children, would "impact their tethering of emotional closeness" to Janet; would "tend to injure or impact their love and affection for" Janet; and would lead the children to question what Janet did and why, which would, in turn, damage their respect and affection for her. Having reviewed the transcript of Shane's interview, we agree with the magistrate court and the district court that, on at least thirty-three separate occasions, Shane spoke of Janet in a way that violated the plain language of the agreed judgment.

Finally, Shane raises several constitutional arguments. For example, Shane argues his due process rights were violated when the magistrate court found him guilty of the third count of contempt because he was never arraigned for the conduct asserted at trial. As the district court concluded, "Shane's due process rights were not violated because his behavior violated the plain,

agreed language in the agreed judgment." Shane also argues the magistrate court's finding of guilt violated his First Amendment right to free speech, citing the same case he provided to the district court for the proposition that nondisparagement orders in divorce and custody cases are unconstitutional. The district court held that Shane's argument "completely fail[ed] to acknowledge the fact that Shane agreed to entry of the agreed judgment and its language."[3] As a result, the district court determined that Shane's argument was baseless and that the magistrate court did not violate his First Amendment right to free speech by finding him guilty of contempt. Shane has failed to show any error in the district court's decision disposing of these arguments.

The magistrate court's finding that Shane was guilty of contempt for violating the terms of the agreed judgment by speaking negatively about Janet during his podcast interview is supported by substantial and competent evidence; the district court did not err in affirming the magistrate court.

### B. Magistrate Court's Award of Attorney Fees and Costs

After finding Shane guilty of all three contempt counts, the magistrate court determined Janet was the prevailing party and awarded her $40,650.22 in attorney fees and costs. On intermediate appeal, the district court vacated the magistrate court's judgment as to the first count of contempt and, as such, also vacated the corresponding award of attorney fees and costs. Additionally, given that both Shane and Janet "prevailed in part and did not prevail in part, the minimal gain to Janet in pursuing contempt and the minimal gain to Shane in pursuing" his intermediate appeal, and the amount of attorney fees spent, the district court declined to award attorney fees or costs to either party on intermediate appeal.

On appeal, Shane asserts the magistrate court's award of attorney fees is "an excessive and unreasonable amount." According to Shane, the magistrate court abused its discretion because it did not offer an explanation to "justify why being found guilty of contempt would make" Shane liable for attorney fees "on every matter, including those from before the alleged contempt existed." However, the record shows that the magistrate court did offer an explanation.

---

[3]     We also note that the Ninth Circuit has held that a party may waive his or her First Amendment rights by entering into a contract. *See Leonard v. Clark*, 12 F.3d 885, 889-90 (9th Cir. 1993) (holding that First Amendment rights may be waived upon clear and convincing evidence that the waiver is knowing, voluntary, and intelligent).

Specifically, the magistrate court found that Shane failed to support his argument with any legal authority and that it was "unaware of legal authority that would support [Shane's] claim." Moreover, the magistrate court determined Shane's argument was not supported by public policy and made the following findings:

> If the law disallowed a fee award for work performed in direct connection to the litigation simply because it was done prior to the filing, parties would be more inclined to file court actions without attempting to settle their disputes out-of-court; they would be precluded from recouping any attorney fees associated with the work done outside the court proceeding. The commencement of a contempt action often serves as a last resort to seek compliance with a court order. It is highly likely the parties in a contempt proceeding incur attorney fees for efforts to resolve an alleged violation prior to the actual contempt proceeding being commenced. Such is the case here.

The magistrate court also found that, as a direct result of Shane's noncompliance with the court's order, Janet had been paying attorney fees since January 2021. Thus, the magistrate court found there was "no legal basis to deny the requested attorney fees simply because they were acquired prior to the motion for contempt being filed." Shane has failed to show the magistrate court abused its discretion in awarding Janet attorney fees as the prevailing party.

## C.     Attorney Fees and Costs on Appeal

On appeal, Janet requests an award of attorney fees, contending she is entitled to reimbursement of her attorney fees and costs in defending this appeal pursuant to I.C. §§ 12-121 and 7-610, as well as I.A.R. 11.1 and 41. An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). An award of attorney fees is appropriate if the appellant only invites this Court to second-guess the trial court on conflicting evidence, or if the law is well settled and the appellant has made no substantial showing that the lower court misapplied the law, or no cogent challenge is presented with regard to the trial court's exercise of discretion. *Pass v. Kenny*, 118 Idaho 445, 449-50, 797 P.2d 153, 157-58 (Ct. App. 1990). That standard for an award of attorney fees has been satisfied in this case. Accordingly, Janet is entitled to an award of attorney fees and costs on appeal.

Shane also requests an award of attorney fees and costs on appeal pursuant to I.C. § 12-121 and I.A.R. 41. However, because Shane is not the prevailing party, he is not entitled to an award of attorney fees or costs on appeal.

## IV.
## CONCLUSION

Substantial and competent evidence supports Shane's convictions for the second and third counts of contempt. Shane has failed to show the district court erred in affirming the magistrate court's findings of fact and conclusions of law. Accordingly, the district court's decision, on intermediate appeal from the magistrate court vacating in part and affirming in part the judgment for contempt, is affirmed. Attorney fees and costs on appeal are awarded to Janet as the prevailing party.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.